## THOMAS LINNEHAN *vs.* EDWARD SAMPSON.

Essex.   Nov. 8, 1878. — May 9, 1879.   ENDICOTT & LORD, JJ., absent.

In an action for personal injuries occasioned by the defendant's bull, while being led through a street of a city, the jury may infer that the defendant knew what is common knowledge in regard to the propensities of such an animal; and testimony that the defendant, after the accident, said that it was careless in his servant to lead the bull in the manner in which he was led, may be considered by the jury as an admission that the bull needed to be kept under control, and that the care taken in driving him through the street was insufficient.

If a person, while walking along a street in a city, hears a cry for help, and sees a man on the ground being gored by a bull, attached to him by a rope, and goes near the bull but does not attempt to assist the man, because he is afraid of the bull, and the bull attacks and injures him, the question, in an action for such injury, whether he was in the exercise of due care, is for the jury.

TORT. The declaration alleged that the defendant, on June 2, 1877, was the owner of a bull; that the bull was wild and vicious, and it was unsafe to drive or permit the bull to go through any public highway, without his being tied down or secured, so as to prevent injury to any person on the highway,

all of which the defendant well knew; that the defendant wrongfully, carelessly and negligently drove the bull, so being wild and vicious, and not properly secured, in a certain highway; and that the bull ran with great violence against the plaintiff, he then being on the highway, and injured him. Answer: 1. A general denial. 2. Contributory negligence.

At the trial in the Superior Court before *Brigham*, C. J., the plaintiff introduced evidence tending to show that on June 10, 1877, he was walking in Lawrence, when his attention was directed to cries of help on a street at a right angle with the street he was on; that when he turned the corner he saw a man lying on his back in the middle of the road holding a rope attached to a ring in the nose of a bull, and the bull attempting to gore him; that the plaintiff went towards the bull and within a few feet of him, but did not attempt to assist the man whom the bull was trying to gore, because he was afraid of the bull, as he appeared to be dangerous; that the bull, by the detaching of the ring from his nose, escaped from the man holding him and rushed towards the plaintiff, who ran towards the gate of a yard on the side of the street, and while in the act of entering the gate was tossed by the bull into the air, fell senseless on the street, and, while lying there, was gored by the bull, and received the injuries complained of; that the defendant was, at the time, the owner of the bull, and his servant, by his direction, was then leading him through the street, when many persons were walking there.

The only evidence, on the part of the plaintiff, of the dangerous character of the bull, was that afforded by the conduct of the bull at the time of the injury, and its circumstances, and a declaration by the defendant to the plaintiff and his wife, that his servant was careless in leading the bull through the streets, and that he ought to have led him tied behind a wagon, as he had been led on a former occasion.

There was evidence, on the part of the defendant, that the bull was nearly three years old, and small of his age; and that, after he was one year old, he was kept for a year on a farm in New Hampshire, and afterwards, until the day of the plaintiff's injury, on a farm in Methuen, from which, on that day, the defendant's servant was removing him to the defendant's farm

in North Andover; that the bull had never exhibited viciousness
of disposition, but although when conducted from New Hamp-
shire to Methuen he was tied behind a wagon, yet on the farm
where he had been kept he had been managed by a snap-ring.
fastened in his nostrils by a spring, and attached to a rope, and
was tractable when thus managed; and that the defendant had
no knowledge of any exhibition of viciousness or dangerousness
of the bull before the plaintiff's injury ; that, while the servant
was leading the bull by the rope, the white dress and red scarf
of a girl excited the bull, the servant struck him, and thereupon
the bull threw the servant down and was attempting to gore
and trample on him, when some person struck the bull, and he
rushed forward and leaped over the servant, detaching the snap-
ring from his nose as he did so, and pursued and injured the
plaintiff; that the man who had the care of the bull at the de-
fendant's farm had found the bull to be gentle, and had never
seen anything dangerous or vicious about him, and that with a
snap-ring he could lead him like a dog.  A snap-ring such as was
used in leading the bull on the occasion of the plaintiff's injury,
and also a ring of different style, such as is used in managing
bulls, and was claimed by the plaintiff to be more adapted to
safety, were exhibited to the jury at the trial.

The defendant requested the judge to instruct the jury as fol-
lows: "1. That, as plaintiff alleges in his declaration that, before
and at the time of the injury, the defendant's bull was wild and
vicious, and was unsafe to be led through the public streets, and
the defendant knew the same, the plaintiff, in order to maintain
this action, must prove that the bull was wild and vicious before
and at the time of the alleged injury, and was unsafe to be led
through the streets unless confined, and that the defendant had
such previous knowledge of the wild and vicious habits and incli-
nations of said bull.  2. That the defendant is not liable for the
injuries wilfully committed by his bull, unless the plaintiff proves
that the defendant had actual notice of the habits and inclinations
of the bull to commit the injury complained of, and that, having
such notice, he did not use reasonable care in taking care of said
bull.  3. That if the plaintiff, when he saw the servant on the
ground, and the bull goring him, and knew the bull was danger-
ous, and, knowing the dangerous character of said bull, made an

attack on the bull, or went so near him that the bull could attack him, he was guilty of contributory negligence. 4. That if the plaintiff knew, or had reasonable cause to believe, that it was dangerous to go to the assistance of the servant, when the bull had him down and was goring him, and did so, it was contributory negligence, and the calls of humanity would be no excuse. 5. That if the bull was only two years and eleven months old, and had no wild and dangerous habits or tendencies known to the defendant or his keeper, and the defendant was informed that he was gentle, and could be led like a dog, then it was not negligence on the part of defendant or his servant to attempt to lead him through the public streets with a snap-ring used by his keeper to lead him. 6. That if the snap-ring used in leading said bull was such as one made and used for the purpose of leading such animals, then the defendant's servant, in using the same to lead such bull, was in the exercise of due care."

The judge refused to give these instructions, but instructed the jury as follows : " The plaintiff, in order to recover, must prove that the bull which caused his injury was the defendant's property, and had such propensities, known to the defendant, as caused him to be a dangerous animal when led by one person only upon the streets of such a city as Lawrence, in the daytime, by means of a rope attached to a snap-ring fastened to the bull's nose, and, being thus dangerous, was led by the defendant's servant, acting within the scope of his general employment, or by the defendant's specific direction; that the conduct of the defendant's servant in thus leading the bull was negligent in view of the propensities of the bull known to the defendant, or of the known, ordinary and usual disposition and propensities of such animals; and that the plaintiff's conduct, on the occasion of his injury, was not wanting in reasonable prudence and caution, in view of all the circumstances of his injury. In the absence of any specific evidence of any exhibitions of viciousness or unruliness by the defendant's bull, which had been seen by or brought to the knowledge of defendant, he would not be responsible for injuries to any person caused by such propensities, unless such propensities were usual and ordinary in bulls like the defendant's bull; in which case, the defendant might reasonably be supposed, as owner of the bull, to have known such ordinary and usual

propensities, and it would have been negligence in him not to have adapted his use and treatment of him to such ordinary and usual propensities."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. C. Sanborn*, for the defendant.

*D. Saunders & C. G. Saunders*, for the plaintiff, were not called upon.

AMES, J. The instructions to the jury were sufficiently favorable to the defendant, and were all that the case required. It was ruled that, in order to recover in this action, the plaintiff must prove that the bull had such propensities, known to the defendant, as caused him to be a dangerous animal when led by one person only, in the day-time, upon the streets of a city, in the manner described in the evidence reported in the bill of exceptions; and also that it must be proved that, in thus leading the bull, the defendant's servant was negligent, in view of the propensities of the bull known to the defendant, or of the known, ordinary and usual disposition and propensities of such animals. It might well be that, previously to the injury, the defendant had had no trouble in managing the animal, and no knowledge of anything specially or peculiarly vicious in his habits or inclinations. But the jury may have believed that he knew, what is a matter of common knowledge, that a bull is an excitable and powerful animal, and that, if from any accidental or unexpected cause he should become excited while led or driven through a public street, he might be dangerous. *Hudson* v. *Roberts*, 6 Exch. 697. It is impossible to say, upon the evidence reported, that the jury would not be justified in finding that the knowledge, which by the ruling of the court was necessary to the maintenance of the action, was satisfactorily proved. There was testimony to the effect that the defendant had said that it was careless so to lead the bull through the streets, and that he ought to have been tied behind a wagon, as he had been once before. The jury, if they believed this evidence, might well have considered it as an admission that he knew that the animal needed to be kept under control, and also that he knew that the control which his servant had applied for the purpose of leading him through the streets was insufficient. In *Lyons* v. *Merrick*, 105 Mass. 71, it was

held that the owner or keeper of animals of a vicious disposition or mischievous habits, of which the owner had previous actual or implied notice, is bound at his peril to keep them at all times and in all places properly secured, and is responsible to any one who, without fault on his own part, is injured by them. The case of *Hewes* v. *McNamara*, 106 Mass. 281, is to the same effect. If the jury were satisfied that the defendant knew, or ought to have known, that the bull had dangerous propensities, it is unnecessary to prove that on any previous occasion he had actually endangered the life or limb of any person. *Worth* v. *Gilling*, L. R. 2 C. P. 1. There is certainly some evidence of a *scienter* in this case, and the question of its weight is not before us. *Applebee* v. *Percy*, L. R. 9 C. P. 647.

A question was raised at the trial as to contributory negligence on the part of the plaintiff; and it was contended that he was not in the exercise of reasonable care in approaching so near to the bull as he did; and that the calls of humanity would be no excuse. But the question whether the plaintiff's conduct on the occasion of the injury was wanting in reasonable prudence and caution, in view of all the circumstances, was submitted to the jury, as a question peculiarly for them to decide. They were to consider all the circumstances, and, among other things, that the life of a fellow-creature was in extreme danger; but they must have understood that reasonable prudence and caution were elements in the case which the plaintiff must prove. It does not follow, as a matter of law, that in encountering the danger he was necessarily guilty of a want of due and reasonable care. The emergency was sudden, allowing but little time for deliberation. Some allowance might well be made for the confusion of the moment. *Buel* v. *New York Central Railroad*, 31 N. Y. 314. In *Eckert* v. *Long Island Railroad*, 43 N. Y. 502, a case of the rescue of a child from being run over by an approaching train, the court say that "the law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons." The law does not require cowardice or absolute inaction in such a state of things. Neither does it require in such an emergency that the plaintiff should have acted with entire self-possession, or that he should

have taken the wisest and most prudent course, with a view to his own self-preservation, that could have been taken. He certainly may take some risk upon himself, short of mere rashness and recklessness. *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137. The evidence reported does not conclusively show a want of due care and prudence on his part, and it was therefore properly left to the jury. *Lane* v. *Atlantic Works*, 107 Mass. 104. What is ordinary care is usually to be settled by the judgment and experience of the jury, and not of the judge. *Gaynor* v. *Old Colony Railroad*, 100 Mass. 208.          *Exceptions overruled.*