MANTHEY v. RAUENBUEHLER et al.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

1. NEGLIGENCE—LEAVING HORSE UNHITCHED—RUNAWAY—OWNER'S LIABILITY.
The owner of a horse and wagon, whose driver leaves the team unhitched and unguarded in a city street, is liable for an injury resulting from the consequent runaway.

2. SAME—ATTEMPT TO STOP TEAM—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
The act of one who attempts to stop a runaway horse and wagon, running through a city street at the time of day when school children occupy the street in leaving school, is not contributory negligence, as a matter of law, as contributory negligence will not be predicated as a matter of law of an effort to save human life, unless the effort is so rash and reckless as to deter a person of reasonable prudence.

3. SAME—CHARGE—ABSTRACT PROPOSITION—EXCEPTION.
The court charged that, "A person standing on a street seeing a horse running away has a right to try and stop that horse; and if he is injured the negligent owner is liable for it. I charge you that as a matter of law;" and added, "But whether this man leaving his workshop and rushing out and seizing the horse as he did, endeavoring to stop it,— whether or not he was guilty of negligence,—I am going to leave to you upon all the facts and circumstances of the case." Defendant excepted to the proposition charged "in so far as it has application to this case." Held that, though the proposition was erroneous, the exception was unavailing, since the court did not make such proposition applicable to the case, but expressly left the question of contributory negligence to the jury.

4. SAME—ERROR—CURED BY SUBSEQUENT PROCEEDINGS.
Defendant requested an additional charge,—"that plaintiff's intestate was guilty of contributory negligence, and cannot recover unless it is shown that he attempted to stop the horse in an effort to save some person from being injured; and it must be shown that at the time he so attempted to stop the horse he knew that there was danger to some person." Held, assuming that defendant was entitled to such charge, the error in its refusal was cured by defendant's immediately requesting the court to charge that there was no evidence that deceased attempted to stop the horse for the purpose of preventing injury or the death of any person, or as to what his motive was, or that any person was in immediate danger, and the court's answer that there was no evidence as to deceased's motive that the court could see, and that he was going to leave the question as to what the evidence was and facts proven, and their trend, to the jury to determine.

5. CHARGE—EXCEPTION—RECORD.
Where defendant excepted "to the qualification of the charge," but the record did not show what part of the charge was qualified, or to what the exception related, the exception was unavailing.

Appeal from trial term, New York county.

Action by Pauline Manthey, as administratrix of the estate of Charles Manthey, deceased, against William Rauenbuehler and another. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and LAUGHLIN, JJ.

Otto H. Dreege, for appellants.

Louis Steckler, for respondent.

HATCH, J.   This action was brought to recover damages for injuries which resulted in the death of the plaintiff's intestate, Charles Manthey, received while attempting to stop a runaway horse belonging to the defendants.   It appeared upon the trial that the plaintiff's intestate, a blacksmith, upon the day of the accident, was working at his trade near the front door of a shop situated on the south side of East Thirteenth street, between First avenue and Avenue A.   At the same time, and on the same side of the street, but about 60 feet nearer First avenue, defendants' horse and wagon, unhitched and unguarded, were left standing by the defendants' driver, who was upstairs in a near-by house.   Four elephants, being driven down the street, frightened the horse, which ran, at a rapid rate of speed, along Thirteenth street, past the shop in which the plaintiff's intestate was working.   As the horse was passing the shop, Manthey rushed out and succeeded in seizing one of the reins of the horse, by which act he pulled the horse into the gutter, but was himself hurled against the corner of a truck, and received the injuries from which death resulted.

It is well settled that failure to properly hitch or guard a horse in the streets of a populous city will justify a finding of negligence, and defendants' act in this respect is admitted.   Norris v. Kohler, 41 N. Y. 42; Pearl v. Macaulay, 6 App. Div. 70, 39 N. Y. Supp. 472.   The appellants, however, contend that the plaintiff's intestate was guilty of contributory negligence in rushing from a place of safety out upon the street to stop a runaway horse.   We do not think that such act can be characterized as contributory negligence as matter of law.   Such question is necessarily dependent upon the circumstances and conditions as they existed at the time when the act was performed.   It appeared from the evidence that the neighborhood in question was a tenement house district, and many children living in that community were in the habit of playing upon the street.   Across from the blacksmith shop was a kindergarten attended by small children, having an exit on Thirteenth street.   Near First avenue was a public school, and these schools were dismissed on Fridays between 2:30 and 3 o'clock in the afternoon.   The accident happened at about 3 p. m. on a Friday.   At the time of the runaway between the blacksmith shop and Avenue A, east of the point of the accident, the street was more or less filled with children, who were crossing back and forth, and playing in the street.   Witness for the defendant testified that in view of the conditions he was apprehensive that the horse, if not stopped, would hurt children and other persons in the street, and at the time of the accident these children were engaged in an attempt to avoid the pending danger.   The deceased, it is fair to presume, understood these conditions, as he had worked in the shop for some considerable time.   Upon this evidence, we think a fair question was presented for determination by the jury, as to whether, when the deceased left the shop and caught the rein, he did such act under an apprehension that if the

horse was not stopped injury would happen to some of the children in the street. It goes without saying that any person observing the condition would naturally apprehend the infliction of injury to the children or others then in the street, and the action of the deceased is clearly to be measured by what was reasonably likely to happen if the horse continued upon his course. In principle, therefore, the case does not differ from those cases where an individual has sought to rescue a child or person from impending danger to life and has received injuries resulting therefrom. Under such circumstances it has been held that contributory negligence may not be imputed as matter of law, but is for the determination of a jury. In Eckert v. Railroad Co., 43 N. Y. 502, 3 Am. Rep. 721, it was said:

"The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons."

The same rule must be applied where the injury likely to be inflicted will be serious, even though it does not clearly appear that death would necessarily result. If the condition be such as shows imminent danger of serious injury, or death, the rule is to be applied to the act out of which the contributory negligence is claimed to arise, and when it is coupled with the negligence of another in producing the condition it will be quite an extreme case which defeats a recovery by the court on the ground of contributory negligence. Gibney v. State, 137 N. Y. 1, 33 N. E. 142, 19 L. R. A. 365, 33 Am. St. Rep. 690; Linnehan v. Sampson, 126 Mass. 506, 30 Am. Rep. 692. In the latter case, the injured person was walking upon the street when he heard a cry for help upon another street, running at right angles to the one he was on. He went to the place from which the cries came, and discovered a man being gored by a bull. He did not attempt to relieve the man, as he was afraid of the bull. While standing near by the bull detached himself from the rope by which he was held, and, being free, turned and charged upon the plaintiff, tossed him in the air, and injured him severely. In an action brought to recover for such injuries, against the owner of the bull, the court held that all of the circumstances and surroundings were to be considered, and that the plaintiff was not guilty of contributory negligence as matter of law in encountering the danger, nor did it show that he was necessarily guilty of a want of due and reasonable care. In the present case, the deceased left the blacksmith shop and attempted to stop the horse. It does not appear that any extreme danger to his own person was apparent in what he did. The emergency requiring action was sudden, and there was little opportunity for deliberation. It does not appear that when he caught the rein he ran risk of serious injury, and it was only when he pulled on the line which he secured that the horse swerved and he was brought in contact with the truck. It certainly would not be permissible under such conditions for the court to characterize the act as rash and reckless, or such an act as would not be done by a person reasonably prudent. On the contrary, we think that, measuring all he did as disclosed by the evidence and surrounding circumstances, the jury were right in concluding that he was guilty of no negligence, but did what a reasonably prudent man would have done under the same circumstances, and it

is fair to say it might safely be done without injury to the person many times. It was not a case where nice distinctions could be made as to the position of the truck, the speed of the horse, and the danger which confronted, unless he was stopped. We are of opinion, therefore, that the case in this respect was for the jury.

It is claimed that errors were committed in the charge in several particulars. The court charged that:

"A person|standing on a street, seeing a horse running away, has a right to try and stop that horse; and if he is injured, the negligent owner is liable for it. I charge you that as matter of law."

It may be conceded that this charge lays down an erroneous proposition of law, but it does not follow for that reason that reversible error was committed, for the court continued, following the last quoted words:

"But whether this man leaving his room or his workshop and rushing out, and seizing the horse as he did, endeavoring to stop it,—whether or not he was guilty of negligence,—I am going to leave to you upon all the facts and circumstances of the case."

It is thus apparent that the court did not make this erroneous abstract statement as the law applicable to the present case, but clearly charged them that the question of contributory negligence, as applied to the concrete case then present, was for their determination. The exception which was taken to the abstract proposition is unavailing in any view, as counsel only excepted to the erroneous part "in so far as it has application to this case." By express direction of the court the rule was not applied to this case, and consequently there was nothing left to which the counsel could except, and he so recognized it by the language which he used.

Error is also claimed in the following refusal to charge:

"I take exception to the qualification of the charge, and I wish to offer an additional charge,—that upon the admitted facts of this case, as shown by the evidence, the plaintiff's intestate, Charles Manthey, was guilty of contributory negligence, and cannot recover unless it is shown that the said Manthey attempted to stop the horse of the defendant, in an effort to save human life, or in an effort to save some person from being injured; and it must be shown that the said Manthey, at the time that he so attempted to stop said horse, knew that there was danger to some person."

We are unable to determine from an examination of the charge and of the request what qualification there was of the charge to which the exception referred. The court was requested to charge six different propositions, the third and fourth of which he refused to charge, and the others he charged without qualification. We do not know, therefore, what he did charge upon this subject. The exception, therefore, is unavailing, and if the request which followed was correct, as applicable to the facts of the case, yet nevertheless the qualified charge, to which reference was made, might have fully protected the defendants' rights, and therefore no error could be predicated of the refusal. But if we assume that the defendants were entitled to this charge, which we only do for present purposes, it was clearly cured by what followed. The defendants' counsel immediately requested the following:

"Also, that there is no evidence in the case that the said Charles Manthey attempted to stop defendants' horse for the purpose of preventing injury or the death of any person. The Court: I must leave to the jury what the motive or purpose was. Defendants' Counsel: And that there is no evidence in the case as to what the motive was,—what the motive of said Manthey in attempting to stop said horse was. The Court: There is no evidence so far as I can see. Defendants' Counsel: That there is no evidence in this case that a person, or any person, was in danger from the running away of this horse. The Court: I decline to charge that. Defendants' Counsel: Any persons who were not in immediate danger,—no evidence in this case that there was any person or persons who were in any immediate danger from the running away of this horse. The Court: I am going to leave that to the jury, whether there was or not. As to what the evidence was,—as to what facts are proven, what their trend is,—I am going to leave to the jury to determine."

In the body of the charge the court had already called attention to the facts connected with the acts of the deceased and the attitude of the defendants thereto. And in the several requests which were made he clearly left to the jury the motive and purpose which actuated the deceased in what he did, and whether there was danger to other persons or children receiving injury if the horse was not stopped. This left for the consideration of the jury substantially every question which the case presented, protected every right to which the defendant was entitled, and under the circumstances of the case, even though there was no pressing immediate danger of human life, or of serious injury to a person from the runaway horse, yet nevertheless it could not be said, as matter of law, that the deceased was guilty of contributory negligence in his endeavor to stop the horse. It is common knowledge that in a thickly populated city there is always danger to life and property from a runaway animal, and those who endeavor to stop it, even in the absence of any immediate pending danger, may not be charged with contributory negligence unless their act can be characterized as rash and reckless. If the act would have been done by a person exercising reasonable care and prudence, measured by the circumstances, then it is not negligence as matter of law, and a case is presented for the jury.

We find no error in this case which calls for a reversal. The judgment and order should therefore be affirmed, with costs. All concur.