[L. A. No. 14406. In Bank.—March 30, 1934.]

WILLIAM U. HENSHAW, Respondent, v. B. W. BELYEA, Appellant.

Harry D. Parker and White McGee, Jr., for Appellant.

Leslie S. Bowden, Gaines Hon and Horace W. Danforth for Respondent.

THE COURT.—Appeal from a judgment entered on a jury's verdict for the plaintiff in an action to recover damages for personal injuries.

On August 28, 1933, the plaintiff was employed by Grunewald & Tudor, who were under contract to do excavating work at 114th Street and Budlong Avenue in the city of Los Angeles. The defendant, B. W. Belyea, who conducted a trucking business, was engaged by Grunewald & Tudor to haul an excavating shovel to that intersection on that day. Budlong Avenue, which runs north and south, intersects 114th Street with a jog. That is, Budlong Avenue north from 114th Street intersects the latter street a distance of from 60 to 90 feet easterly from the point where Budlong Avenue intersects the southerly side of 114th Street. The latter was a paved street. It was graded downward from the east to the north extension of Budlong Avenue. Upward from the west curb of the north extension of Budlong

Avenue to the south extension of Budlong Avenue there was about a ten per cent grade. The district was apparently a sparsely settled community. The plaintiff, who was employed to operate the shovel and whose duties also included the rendering of assistance in getting the shovel to the job and in loading and unloading it, arrived at the intersection in advance of the truck.

The plaintiff was standing on the south side of 114th Street near the east curb of the south extension of Budlong Avenue talking to Mr. Coon, the contractor on the job, when the truck advanced down 114th Street from the east toward the north extension of Budlong. The excavating shovel was loaded on the truck and a trailer, the length of which over all was about 61 feet. The combined weight of the truck, trailer and shovel was 81,000 pounds, or over 40 tons. The driver of the truck, Norman Kresge, was alone. He passed the·north extension and commenced the climb upward toward the south extension. It was his intention to unload at the south extension, where the excavating was to be commenced. Near the east curb line of the south extension the truck stopped. The driver testified that he was unable to get the truck and trailer with its load over the grade and that he therefore started backing down on compression. There was testimony that the drive wheels, which also were the only wheels connected with the foot and hand brakes, started to slide. The plaintiff ran from his position on the curb, took a "4x4" four-foot block from the truck bed, carried and used for such purpose, and placed it under the left drive wheel in an attempt to stop the truck and trailer. As he reached for another block, the wheel, passing over the inner end of the block, raised its outer end, which caught and crushed under it the plaintiff's right foot and ankle as the wheel went over the block. At the same time that the plaintiff was putting a block under the wheel of the truck, another witness, Mr. Glancy, placed a block under the rear wheel of the trailer, which ran over the block, whereupon he placed another block under the same wheel and at the same time heard the plaintiff cry out. The truck then stopped almost instantly. Mr. Glancy and the plaintiff both testified that the drive wheels seemed to be sliding at the time they ran out to place the blocks. Instructions were given to the jury on the issues of the defendant's negligence and the plaintiff's contributory negli-

gence. The jury returned a verdict for the plaintiff in the sum of $15,349.70. From a judgment entered thereon the defendant has appealed.

The jury was instructed that if the defendant was negligent in the operation and management of the truck and such negligence imperiled human life, the plaintiff, if his acts were reasonably necessary for the safety of human life, was not contributorily negligent in voluntarily leaving a place of safety and incurring danger so long as he did not act with a recklessness which would not be warranted under the circumstances in the judgment of a prudent man.

Two contentions are made on this appeal. First, that there was no evidence sufficient to warrant the jury in finding that the defendant was negligent; second, that there was not sufficient evidence to sustain the jury's implied finding that human life was imperiled so as to justify the plaintiff's conduct or to warrant the issue of contributory negligence being submitted to the jury on that theory. Error is also assigned on the court's refusal to grant the defendant's motion for a nonsuit.

We are not able to say on the facts presented that the question of the defendant's negligence was not for the jury. Whether the truck with the trailer was properly equipped with brakes, whether these vehicles were out of control, and whether there was negligence in the operation thereof, presented close questions of fact which might, on this record, be resolved either way. The principal question presented is whether the court applied the correct doctrine under the circumstances of the present case by the instruction above noted. It is the defendant's contention that the evidence on the question whether human life was imperiled is insufficient to justify the submission of the issue of the plaintiff's contributory negligence to the jury under that instruction and that no other theory is applicable; hence that the court should have granted the defendant's motion for a nonsuit.

The doctrine in question grew out of such cases as *Eckert* v. *Long Island R. R. Co.*, 43 N. Y. 502 [3 Am. Rep. 721], said to be the leading case allowing a recovery by the rescuer against a defendant by whose negligence the person rescued was placed in a position of danger. There the rescuer attempted to rescue a child on a railroad track from in front of a rapidly approaching train. He suc-

ceeded in his object but was himself killed. The court stated the general rule which has since been followed in similar cases, as follows: ''Under the circumstances in which the deceased was placed, it was not wrongful in him to make every effort in his power to rescue the child, compatible with a reasonable regard for his own safety. It was his duty to exercise his judgment as to whether he could probably save the child without serious injury to himself. If, from the appearances, he believed that he could, it was not negligence to make an attempt to do so, although believing that possibly he might fail and receive an injury himself. He had no time for deliberation. He must act instantly, if at all, as a moment's delay would have been fatal to the child. The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons.''

*In Pierce* v. *United Gas & Elec. Co.*, 161 Cal. 176 [118 Pac. 700], it was indicated that the general rule was applicable in this state, although a verdict and judgment in that case was reversed on the ground, among others, that the issue of the defendant's negligence toward the person being rescued was not properly submitted to the jury. Whether the rescuer acted with a recklessness unwarranted by the judgment of a prudent man in attempting to rescue one placed in peril by the defendant's negligence was, in *McClure* v. *Southern Pac. Co.*, 41 Cal. App. 652, 656 [183 Pac. 248], stated to be the test in arriving at a conclusion whether he was guilty of contributory negligence. (19 Cal. Jur. 602.)

No difficulty in the application of the principle arises when the facts are similar to those involved in the Eckert case and clearly show that some particular person is found in such imminent peril as that the rescuer instinctively and spontaneously responds to the call for immediate action to avert impending injury or death. In cases involving such circumstances the principle is recognized without conflict and applied wherever the question of the defendant's negligence is properly one for the jury. (*Linnehan* v. *Sampson*, 126 Mass. 506 [30 Am. Rep. 692]; *Norris* v. *Atlantic C. L. R. Co.*, 152 N. C. 505 [67 S. E. 1017, 27 L. R. A. (N. S.) 1069 and note]; *Corbin* v. *Philadelphia*, 195 Pa.

461 [45 Atl. 1070, 78 Am. St. Rep. 825, 49 L. R. A. 715, and note]; *Wagner* v. *International R. Co.*, 232 N. Y. 176 [133 N. E. 437, 19 A. L. R. 1, and note]; 20 R. C. L. 131 et seq.; see *Donahoe* v. *Wabash, St. L. & P. R. Co.*, 83 Mo. 560 [53 Am. Rep. 594]; *Bracey* v. *Northwestern Imp. Co.*, 41 Mont. 338 [109 Pac. 706, 137 Am. St. Rep. 738]; *Taylor Coal Co.* v. *Porter's Admr.*, 164 Ky. 523 [175 S. W. 1014, 1017].) The foregoing authorities also establish that in such cases it is for the jury to say whether the plaintiff has acted with prudence under the circumstances or has conducted himself in so reckless a manner as to defeat the right of recovery.

The conflict in the application of the doctrine to the facts in particular cases has arisen when it was sought to apply the principle where the peril was not imminent or did not threaten a particular person, or where there was no threat of danger to human life but the motive and purpose of the plaintiff was to prevent damage to property. In the present case there was a conflict in the evidence as to whether there were other people in the street. It was, however, not a busy thoroughfare. There was evidence from which the jury could believe that there was a boy on a bicycle a distance of 50 or 60 feet behind the truck and that there were some other children on the sidewalk on the south side of 114th Street, a distance of about 100 feet. There is no conflict as to the fact that there was no one in a position of such imminent and immediate danger as is described in the foregoing cases, and the plaintiff himself testified that he attempted to stop the truck because he thought it was his duty to his employer.

It has been stated that the threatened danger must be imminent and real, and not merely imaginary or speculative. (Note, 19 A. L. R., *supra*, at p. 10, and cases cited.) The defendant contends that cases holding to that effect are applicable to the present situation. The case principally relied upon is *Eversole* v. *Wabash R. Co.*, 249 Mo. 523 [155 S. W. 419]. In that case the defendant's engineer was backing a string of freight-cars on a down grade and the cars became uncoupled from the engine when the engineer slackened the speed. The plaintiff, a bystander, who was an experienced switchman, jumped on the engine and signaled to the engineer that he would make the coupling if the engineer would speed up and overtake the string,

to which the engineer assented. Before, however, he had gathered the requisite speed the runaway string collided with another train, and the plaintiff was caught between the freight-cars and the engine. The court in that case, referring to a previous decision (*McManamee* v. *Missouri Pac. Ry. Co.*, 135 Mo. 440 [37 S. W. 119]), stated that it had never extended the doctrine of the Eckert case to mere property. It concluded that the question had therefore been improperly submitted to the jury because no one was shown actually to have been in peril, inasmuch as the track was not one used for passenger service and the hour was midafternoon, when passenger trains were not arriving. Furthermore, unknown to the plaintiff, the crew had been signaled to leave and had left the train. The court said: "But, further, one who attempts to assert the original negligence of a defendant toward one who is in peril must show that there was someone in peril and that he acted from humanity's sake to rescue such person from peril. It is only under such circumstances that the usual rash acts of the rescuer is excusable, and he is permitted to impute the negligence committed as against the person in peril to himself. Under the evidence in this case, plaintiff saw no person in peril. . . . Some one must be actually in peril before the rescuer is authorized to act. At the broadest, the situation must be such as to clearly convince the rescuer that human life or limb is in peril." By similar reasoning a conclusion was reached in the case of *Wilson* v. *New York, N. H. & H. R. Co.*, 29 R. I. 146 [69 Atl. 364], that a brakeman, who met his death when he was looking backward trying to scare children from running alongside the train by being hit by a post negligently maintained on the right of way, was contributorily negligent because no imminent danger to human life was shown. The court expressly refused to extend the principle of the Eckert case to the circumstances there presented. The case of *Wright* v. *Atlantic Coast Line R. R. Co.*, 111 Va. 670 [66 S. E. 848, 19 Ann. Cas. 439, 25 L. R. A. (N. S.) 972], is also relied upon by the defendant. There the plaintiff stood in the track of an approaching freight train frantically signaling it to stop in order to avert injury to her mother, who was walking alongside in a place of safety, but whom the plaintiff knew would step in the path of the freight in the belief that it was the passenger train which

customarily stopped on signal and which they expected to board. It was held that the defendant was not negligent inasmuch as no duty rested upon it either to stop or to slacken its speed, nor was it negligent in interpreting the plaintiff's signal, not as a warning, but as a stop signal for a passenger train. The court furthermore refused to apply the imminent peril doctrine inasmuch as the mother was not in a position of peril but in fact was in a place of safety at the time the plaintiff signaled and "that the mother's peril arose when she deliberately stepped from her place of safety in the public road upon the track in front of a rapidly moving train, when it was too late to save her or to save the plaintiff. According to the authorities, as already seen, the mother must have been at the time of the attempted rescue in a place of imminent danger caused by the negligence of the defendant in order to excuse the contributory negligence of the plaintiff." The fact, however, that in that case negligence of the defendant was not proved disposes of it and renders it a case not in point on the present discussion. Likewise the case of *Tyler* v. *Barrick & Son,* 178 Iowa, 985 [160 N. W. 273], also relied upon, is not of any particular assistance. A ground of the decision in that case was that the danger to the person supposedly being rescued was in part due to the plaintiff's own acts, which on the facts did not free him from the charge of negligence which either contributed to or was the sole proximate cause of his injury.

On the other hand courts have extended the principle underlying the decision in the Eckert case to facts where, although no person is shown to be directly in the path of a moving instrumentality and in no imminent danger from which an immediate rescue is imperative in order to save him from certain injury or death, nevertheless it is shown that injury might result to persons in the vicinity unless steps be taken to stop the moving agency. Cases involving runaway horses illustrate this extension of the Eckert case. (See note, 19 A. L. R., *supra,* at page 28 et seq.) Such a case is *Hollaran* v. *City of New York,* 168 App. Div. 469 [153 N. Y. Supp. 447], wherein it was decided that it was not necessary that the danger should have reached or menaced a particular person and that under the particular facts it was a fair question for the jury whether the venture of the decedent was justified by the circumstances.

The court cited *Manthey* v. *Rauenbuehler,* 71 App. Div. 173 [75 N. Y. Supp. 714], where the principle of the Eckert case was applied under similar facts. There the test was stated to be that "the action of the deceased is clearly to be measured by what was reasonably likely to happen if the horse continued upon its course". The Supreme Court of Illinois, in the case of *Devine* v. *Pfaelzer,* 277 Ill. 255 [115 N. E. 126, L. R. A. 1917C, 1080], recognized the extension of the doctrine in the two foregoing cases, but concluded that the trial court erred in not directing a verdict for the defendant where the evidence was that there were no people in the roadway and there was no evidence that it was a busy street and where the plaintiff had no occasion to believe that anyone was in danger. Also, in the case of *McDonald* v. *Burr,* 12 Sask. L. R. 482, recovery was not allowed in the absence of evidence that children were in the street or other evidence to support the palintiff's stated apprehension that lives were in danger. In *American Express Co.* v. *Terry,* 126 Md. 254 [94 Atl. 1026, Ann. Cas. 1917C, 650], the plaintiff was injured while attempting to stop an electric truck which was running without a driver in control. There were persons and other cars in the street, although not in the immediate path of the truck. It was held that the court properly submitted to the jury the questions of the defendant's negligence and the plaintiff's contributory negligence, and the further question whether the moving truck endangered the lives and property of persons on the street. In *Thoresen* v. *St. Paul & Tac. L. Co.,* 73 Wash. 99 [131 Pac. 645, 132 Pac. 860], the plaintiff, a stevedore, was engaged in unloading lumber from small flat top cars on to the dock. These cars were ordinarily pushed around by hand. There was no buffer or block to prevent the cars running off the end of the dock. The plaintiff observed an unattended loaded car coming down an incline at a considerable speed, which had been negligently started down by the defendant's employee. He endeavored to stop it by twice placing a board in front of the hind wheel. On the third attempt the front wheel ran over the shorter rail at the end of the dock and some lumber falling off crushed the plaintiff's legs. The plaintiff recovered a judgment. It was said: "Attention is called . . . to the further fact that no harm could have come, as the sequel proved, had the car been allowed to run

to the end of the rails. But notwithstanding the respondent's acts may not have been essential either to preserve the property from loss or protect other individuals from harm, we think nevertheless that the question whether his act constituted contributory negligence was a question for the jury. He was entitled to act upon appearances, and if his conduct was that of a reasonably prudent person under the circumstances, he is not to be charged with contributory negligence even though he may have been deceived thereby.'' It was also held that the plaintiff's testimony as to his motive in attempting to stop the car, viz., to prevent destruction to property and possible injury to persons, was admissible inasmuch as the plaintiff's motive was material on the issue of his contributory negligence.

On the present record the only motive which the plaintiff had and the only motive which is supported by the evidence was that to save property and principally the property of his employer. This is not a case involving a runaway or fast-moving instrumentality with no one in control. The only deduction which the plaintiff was reasonably justified in making from the driver's actions and the movements of the truck was that the motor was not equal to pulling the load to the top of the grade, that the truck started back by its own weight and that the brakes were insufficient to prevent the truck's gathering momentum; that if additional aid in checking the momentum of the truck was not immediately furnished, serious injury to the shovel might conceivably follow. There were no appearances which would justify the plaintiff in concluding that persons in the vicinity might be endangered. The street was not a busy one, and there was no evidence that the few persons who were about were or would be in such a position as to be unable to utilize their own faculties in more than sufficient time to keep clear of such a large and slow-moving vehicle and load, which at best, on account of the topography of the roadway, could move back but a short distance on its own momentum. We conclude that the court committed error in submitting to the jury the issue of contributory negligence based on the theory that human beings might be shown to have been in imminent peril, or in any danger of injury, and that the giving of the instruction on that theory was prejudicial to the rights of the defendant.

█ It does not follow, however, that the issue is not properly one for the jury on any theory and that the motion for a nonsuit should have been granted. Some of the decisions have followed the *dictum* in the Eckert case (*Eckert* v. *Long Island R. Co., supra,* at p. 506), and have denied a recovery on the ground of the plaintiff's contributory negligence where he has assumed the role of rescuer "in the protection of mere property". (See note to *Corbin* v. *Philadelphia, supra,* 49 L. R. A., at p. 719.) There is, however, a well-defined diversity of opinion and decision on the question when it relates to an attempt to save property from destruction; but where the attempt is by the owner to save his own property or by the employee to save the property of his employer the recovery has generally been allowed. Authorities holding divergent views are collected in a note following the case of *Pegram* v. *Seaboard Air Line Ry.,* 139 N. C. 303 [51 S. E. 975, 4 Ann. Cas., at pages 216 and 217], and in a note following the case of *McKay* v. *Atlantic Coast Line R. R. Co.,* 160 N. C. 260 [75 S. E. 1081, Ann. Cas. 1914C, at pages 413 and 414]. In *Pegram* v. *Seaboard Air Line Ry., supra,* in its discussion of the question whether the doctrine is applicable when the person injured or killed has attempted to save property from destruction the court stated: "Some jurisdictions deny the right to recover at all, while others have extended the rule so as to give the party injured redress where his effort to save property has been such as a reasonably prudent man would have made under similar circumstances. No one, however, should be permitted to recover for injury sustained in attempting to recover mere property in the face of *obvious* danger such as no reasonably prudent man would under the circumstances incur (citing authorities). . . . We are willing to hold with many able jurisdictions that when the employer's property is set on fire by the negligence of another, the employee may attempt to rescue it, but not in the presence of obvious danger." Following that pronouncement, the court in the case of *McKay* v. *Atlantic Coast Line R. Co., supra,* reversed a judgment for the defendant. Other cases cited as in accord in the note following that case in Ann. Cas. 1914C, at page 414, are: *Davis* v. *Savannah L. Co.,* 11 Ga. App. 610 [75 S. E. 986]; *Leavenworth Coal Co.* v. *Ratch-*

*ford,* 5 Kan. App. 150 [48 Pac. 927]; *Finnigan* v. *Biehl,* 61 N. Y. Supp. 1116; *Ivy* v. *Wilson,* Cheves L. (S. C.) 74; *Thompson* v. *Seaboard Air Line Ry.,* 81 S. C. 333 [62 S. E. 396, 20 L. R. A. (N. S.) 426]; *Temple Elec. Light Co.* v. *Halliburton,* (Tex. Civ. App.) 136 S. W. 584; *Thorn* v. *James,* 14 Manitoba, 373. (See, also, *Henry* v. *Cleveland etc. R. Co.,* 67 Fed. 426; *Liming* v. *Illinois Cent. R. Co.,* 81 Iowa, 246 [47 N. W. 66].) In *Thompson* v. *Seaboard Air Line Ry., supra,* the rule supported by the foregoing cases is stated to be: "The rule was established in this state in 1840 by the case of *Ivy* v. *Wilson,* Cheves, 74, that it is not contributory negligence *per se* for one who owes the duty to protect property to take a manifest risk to save it, unless the risk was wanton or unreasonable, and that the exposure by a person so situated is not to be presumed to be wanton or unreasonable exposure to unnecessary danger. The test is whether a reasonably prudent man in the same exigency would have assumed the peril." We conclude that the authorities support the application of that rule to the facts in the present case.

One of the principal cases cited as illustrating the contrary conclusion is that relied upon by the defendant here, viz.: *Eversole* v. *Wabash R. Co., supra.* In 20 R. C. L., at page 133, section 110, the foregoing divergence of opinion is noted and the statement is made that the weight of modern authority favors the extension of the doctrine so as to give the party injured redress where his effort to save property has been such as a reasonably prudent man would have made under the circumstances. In this jurisdiction the case of *Deville* v. *Southern Pac. R. R. Co.,* 50 Cal. 383, appears to be the only decision which bears upon the question. In that case the plaintiff attempted to rescue his vegetable wagon and team of horses from the path of the defendant's approaching train. One of the grounds of denial of the plaintiff's right to recover was his contributory negligence in leaving his team unhitched in close proximity to the railroad track at a time when the train usually came so that they became frightened and ran upon the track. The result in that case is not inconsistent with the trend of modern authority.

Under the decisions hereinabove cited as illustrating the weight of authority on the subject, we conclude that there was no error in denying the motion for a nonsuit. In view

of the condition of the record the issue of the alleged negligence of the defendant should be retried, if a retrial is had, and the issue of the alleged contributory negligence of the plaintiff should be retried in accordance with the views herein expressed.

The judgment is reversed.

Rehearing denied.