[No. D055920. Fourth Dist., Div. One. Apr. 29, 2011.]

AARON M. TUCKER et al., Plaintiffs and Appellants, v.
CBS RADIO STATIONS, INC., et al., Defendants and Respondents.

COUNSEL

Biren/Katzman and Matthew B.F. Biren for Plaintiffs and Appellants.

Bacalski, Ottoson & Dubé, Denise M. Serino and Gary Carl Ottoson for Defendants and Respondents CBS Radio Stations, Inc., individually, and dba KFRG, and Ron Martin.

Gray • Duffy and Brian Martin Plessala for Defendant and Respondent Jeanne Boardman, dba Boardmanville Trading Post.

## OPINION

**McINTYRE, J.**—In general, the rescue doctrine permits a rescuer to recover for injuries sustained while attempting to rescue a party placed in danger by the defendant's conduct. In this case we conclude that the rescuer cannot maintain negligence claims against defendant because he failed to establish that a duty of care was owed to the rescued party.

Aaron M. Tucker and his wife, Jeri Lyn Hawk-Tucker (together the Tuckers), appeal from a judgment dismissing CBS Radio Stations, Inc., individually and doing business as KFRG (KFRG), Ron Martin (together with KFRG, CBS), and Jeanne Boardman (Boardman), doing business as Boardmanville Trading Post, from this action after the trial court sustained demurrers to their second amended complaint (SAC) without leave to amend. In the SAC, Aaron alleged causes of action for negligence against CBS and Boardman, and a cause of action for vicarious liability against Boardman, all

stemming from an off-road-vehicle event in the Imperial Sand Dunes. Jeri asserted a cause of action for loss of consortium against CBS and Boardman.

The Tuckers contend the trial court erred in sustaining the demurrers based on the finding that CBS and Boardman did not owe a duty of care to Aaron, or David Kendle, another defendant in this action. The Tuckers also contend they alleged sufficient facts for application of the rescue doctrine.

As discussed below, although we agree that the Tuckers stated sufficient facts for application of the rescue doctrine, we affirm the judgment because the Tuckers failed to establish the requisite duty of care for their negligence claims. Because the negligence claims fail as a matter of law, the remaining claims for vicarious liability and loss of consortium fail as well.

## FACTUAL AND PROCEDURAL BACKGROUND

In accordance with the principles governing our review of a ruling sustaining a demurrer, the following factual recitation is taken from the allegations of the SAC. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].)

In January 2006, Aaron participated in an off-road-vehicle "Poker Run" event in the Imperial Sand Dunes Recreational Area in Glamis, California. CBS organized the Poker Run, which consisted of an off-road-vehicle riding event, raffle, free concert, and other entertainment activities. Martin, an employee of KFRG, was the promotions manager and coordinator for the event. Boardman agreed that CBS could stage aspects of the Poker Run at her property, Boardmanville. Boardman and CBS were joint venturers in regard to the Poker Run.

Individuals who fully participated in the Poker Run, including Aaron, paid a $50 entry fee, for which they received an event T-shirt, the right to win prizes and a raffle ticket. These individuals were also required to sign a release of liability form. Other persons, including Kendle, participated in the event but did not pay the entry fee. The Poker Run riding event, free concert, and related activities were open to the public, but those who did not pay the entry fee did not receive the event T-shirt and were not eligible for prizes.

The Poker Run riding event started at 9:00 a.m. at a base camp located on property partially owned by Boardman and partially owned by the Bureau of Land Management (BLM). Participants were given a playing card to have punched at five checkpoints. The participants with the best poker hands, based on the punched cards, won prizes. In order to qualify for the prizes, participants were required to return to the base camp by 3:00 p.m.

Four of the five checkpoints were located west of railroad tracks owned by Union Pacific Railroad Company (Union Pacific), on land owned by the BLM. The remaining checkpoint was at the base camp, located east of the railroad tracks. The base camp was also the location of the free concert and other entertainment activities. Participants were told to use a culvert, "Wash 10," for access from the west side of the railroad tracks to the base camp. Wash 10 is a tunnel owned by Union Pacific that is approximately six to eight feet wide and runs below the railroad tracks.

Between 2:30 p.m. and 3:00 p.m., Wash 10 became extremely congested as Poker Run riding participants tried to return to the base camp in time to qualify for the raffle and attend the free concert. As a result of the congestion, a number of off-road-vehicle riders, including Aaron and Kendle, decided to cross over the railroad tracks rather than use Wash 10. After crossing over the railroad tracks, Aaron looked back and saw that Kendle and his vehicle were stuck on the tracks. Thereafter, Aaron, who was wearing a helmet and could not hear clearly over the noise of many off-road vehicles, heard someone say "train." Aaron then looked and saw a southbound train approaching. Concerned that Kendle might get hit by the train or that the train might hit the vehicle stuck on the railroad tracks, Aaron dismounted his vehicle and went to help Kendle. Kendle successfully got off of his off-road vehicle. Aaron and Kendle then proceeded to try to dislodge Kendle's vehicle from the tracks. After hearing the train's whistle, Aaron jumped to get out of the way of the train and knocked Kendle out of the way as well. The train did not hit either Aaron or Kendle, but did hit Kendle's vehicle, propelling it into Aaron, causing injuries to him.

In October 2007, the Tuckers filed a complaint for damages, alleging causes of action for negligence and loss of consortium against CBS, Boardman, and other defendants. CBS and Boardman filed motions for summary judgment. The trial court treated the motions for summary judgment as motions for judgment on the pleadings, and granted them on the basis that the Tuckers failed to state a cause of action because they did not allege that CBS and Boardman owed a duty of care to Kendle. The trial court reasoned that in order for a duty to be owed to Aaron, as the rescuer, a duty must have been owed to Kendle. The trial court granted the Tuckers leave to amend.

In December 2008, the Tuckers filed their first amended complaint. CBS and Boardman responded with demurrers. The trial court found that under the facts alleged in the first amended complaint, CBS and Boardman did not owe a duty of care to Kendle. However, the trial court stated that the Tuckers might be able to allege a statutory or regulatory duty to Kendle. Accordingly, the court sustained the demurrers with leave to amend.

In March 2009, the Tuckers filed their SAC. To allege a statutory duty of care owed by CBS and Boardman, the Tuckers pointed to a special recreation application and permit (the Permit) issued by the BLM to CBS, which referenced 43 Code of Federal Regulations group 8300, and included a requirement of notice to other private landowners. CBS and Boardman filed demurrers to the SAC. The trial court sustained the demurrers without leave to amend on the basis that the SAC, along with the Permit, which the court judicially noticed, did not establish that Boardman and CBS owed a duty of care to Aaron or Kendle.

## DISCUSSION

### I. *Standard of Review*

We review an order sustaining a demurrer without leave to amend de novo (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]), assuming the truth of all properly pleaded facts as well as facts inferred from the pleadings, and give the complaint a reasonable interpretation by reading it as a whole and its parts in context (*Palacin v. Allstate Ins. Co.* (2004) 119 Cal.App.4th 855, 861 [14 Cal.Rptr.3d 731]). However, we give no credit to allegations that merely set forth contentions or legal conclusions. (*Financial Corp. of America v. Wilburn* (1987) 189 Cal.App.3d 764, 768–769 [234 Cal.Rptr. 653].) A complaint will be construed "liberally . . . with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) If the complaint states a cause of action on any possible legal theory, we must reverse the trial court's order sustaining the demurrer. (*Palestini v. General Dynamics Corp.* (2002) 99 Cal.App.4th 80, 86 [120 Cal.Rptr.2d 741].) Whether a plaintiff will be able to prove its allegations is not relevant. (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

### II. *Analysis*

#### A. *Negligence and Duty of Care*

Aaron asserts negligence causes of action against Boardman and CBS, and separately asserts that Boardman, as a joint venturer, is vicariously liable for the negligence of CBS.

■ "Liability for negligent conduct may only be imposed where there is a duty of care owed by the defendant to the plaintiff or to a class of which plaintiff is a member. [Citation.] A duty of care may arise through statute or by contract. Alternatively, a duty may be premised upon the general character of the activity in which the defendant engaged, the relationship between the

parties or even the interdependent nature of human society." (*J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60].)

■ Every person is responsible for injuries caused by his or her lack of ordinary care. (Civ. Code, § 1714, subd. (a); *Rowland v. Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561] (*Rowland*).) Exceptions to this general rule of liability apply only when supported by public policy. (69 Cal.2d at p. 112.) In determining whether such an exception should apply, courts look at "foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Id.* at p. 113.)

Here, Aaron asserts that CBS and Boardman owed a duty of care to him directly, and to Kendle. However, the facts alleged in the SAC do not support the assertion that a duty of care was owed directly to Aaron. Rather, Aaron alleges that, "[a]t the point where [he] exited his vehicle in order to attempt to help Kendle and his quad, he was no longer participating in the Poker Run, but rather was involved in an attempted rescue of Kendle and his quad." Thus, the conduct of CBS and Boardman only affected Aaron to the extent that he attempted to rescue Kendle or his vehicle from the railroad tracks. Accordingly, we must first consider whether any duty of care owed to Kendle extends to Aaron.

■ "[T]he rescue doctrine varies the ordinary rules of negligence . . . [as] it permits the rescuer to sue on the basis of defendant's initial negligence toward the party rescued . . . ." (*Solgaard v. Guy F. Atkinson Co.* (1971) 6 Cal.3d 361, 368 [99 Cal.Rptr. 29, 491 P.2d 821].) "[P]ersons injured in the course of undertaking a necessary rescue may, absent rash or reckless conduct on their part, recover from the person whose negligence created the peril which necessitated the rescue." (*Ibid.*) In order to assert the rescue doctrine, the rescuer must show that there was someone in peril and that he acted to rescue such person from the peril. (*Henshaw v. Belyea* (1934) 220 Cal. 458, 463–464 [31 P.2d 348] (*Henshaw*).)

CBS and Boardman rely on *Henshaw* to argue that the rescue doctrine does not apply in this case because there was no threat of peril to human life or limb as the alleged rescue was only of Kendle's vehicle, not Kendle himself. In *Henshaw*, the court found the rescue doctrine did not apply because the evidence in the record revealed that the plaintiff's only motive was to save property. (*Henshaw, supra,* 220 Cal. at p. 467.) CBS's and Boardman's

reliance on *Henshaw* is misplaced because although Kendle's life may not have been endangered, the SAC includes allegations that Aaron was concerned that the train could hit the vehicle on the tracks, causing the train to derail or knocking the vehicle into other riders in the vicinity. Thus, the SAC alleges sufficient facts for application of the rescue doctrine. The question of whether there were actually other persons in the area who might have been injured is a question of fact to be determined by a jury. (See *id.* at p. 466.)

Having determined that the SAC alleges sufficient facts to permit Aaron to sue based on purported negligence toward Kendle, we must next consider whether CBS and Boardman owed a duty of care to Kendle. Accordingly, we consider the *Rowland* factors.

■ Foreseeability has become the chief factor in the duty analysis (*Scott v. Chevron U.S.A.* (1992) 5 Cal.App.4th 510, 515 [6 Cal.Rptr.2d 810]), and "[w]hile we characterize foreseeability as a consideration, it is more than that" (*Sturgeon v. Curnutt* (1994) 29 Cal.App.4th 301, 306 [34 Cal.Rptr.2d 498] (*Sturgeon*)). "If the court concludes the injury was not foreseeable, there was no duty [and t]here is no need to discuss the remaining considerations." (*Ibid.*) "However, the opposite is not necessarily true." (*Ibid.*) If we conclude the injury was foreseeable, we "go on to balance the other *Rowland* considerations." (*Id.* at p. 307.)

Foreseeability supports a duty only to the extent it is reasonable, because rarely is anything completely unforeseeable. (*Sturgeon, supra*, 29 Cal.App.4th at p. 307 ["On a clear day, you can foresee forever."]; *Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 47 [123 Cal.Rptr. 468, 539 P.2d 36] ["virtually every act involves some conceivable danger"].) Courts use a subjective reasonableness standard in determining whether the degree of foreseeability is high enough to impose a duty on the defendant to act on it. (*Sturgeon, supra*, at p. 307.)

■ The Tuckers assert that it was foreseeable that participants would cross over the railroad tracks to avoid congestion at Wash 10, especially because of the deadline to qualify for the raffle and the start time of the free concert. We agree with the Tuckers that it was foreseeable that paying participants might cross over the railroad tracks in order to return to base camp in time to qualify for the raffle. However, we do not agree with the Tuckers to the extent they argue that CBS or Boardman should have reasonably foreseen that nonpaying participants, such as Kendle, would cross over the railroad tracks to return to base camp in time for the free concert or otherwise.

Even if such a consequence was foreseeable, however, this alone does not establish the existence of a duty. A consideration of the other relevant policy

factors for determining whether a duty exists supports the conclusion that CBS and Boardman had no duty of care under common law to Kendle. Although Aaron alleges that he suffered injuries from the incident in this case, that factor alone does not weigh strongly in favor of imposing a legal duty on CBS or Boardman. (*Rowland, supra*, 69 Cal.2d at p. 113.) Similarly, although there may be a causal connection between CBS's and Boardman's conduct in this case and Aaron's injuries, that connection in the circumstances of this case is not sufficiently close to weigh strongly in favor of imposing a legal duty on CBS or Boardman. The factual series of events leading to Aaron's injuries involved an extended sequence of multiple occurrences not reasonably foreseeable generally and, even less so, in the particular circumstances of this case. As a result of congestion at Wash 10, Aaron and Kendle, a nonpaying participant who did not have a deadline to win prizes, decided to proceed over the railroad tracks. After clearing the tracks, Aaron looked back, saw that Kendle was stuck, and returned to the tracks to assist him. Although Kendle and Aaron were both able to get off the tracks, they continued to try to free the vehicle. Both riders again got out of the way of the train, but the train collided with the vehicle on the tracks, causing the vehicle to be propelled into Aaron. We conclude there was not a "close" connection between CBS's or Boardman's conduct and Aaron's injuries. (*Ibid.*)

Furthermore, we conclude there was no more "moral blame" associated with CBS's and Boardman's conduct than would otherwise be found in an ordinary negligence case. (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 270 [80 Cal.Rptr.2d 196] ["the moral blame that attends ordinary negligence is generally not sufficient to tip the balance of the *Rowland* factors in favor of liability"].) Although we presume, as the Tuckers assert, that had CBS and Boardman taken additional measures to protect riders (e.g., consulting with professional event planners, warning Union Pacific of the event, monitoring traffic at Wash 10, instructing participants not to cross over the railroad tracks), Aaron's injuries could have been avoided, it was not CBS's or Boardman's moral responsibility to undertake all possible measures to protect Kendle or Aaron from injury when the injuries were not reasonably foreseeable in the circumstances of this case.

The policy of preventing future harm also does not strongly weigh in favor of imposing a legal duty on CBS or Boardman. The policy of preventing future harm should not be extended so far as to unduly burden defendants by requiring them to take such preventive measures when the general type of event, as in this case, is not reasonably foreseeable. Here, CBS and Boardman did not own the railroad tracks or the land upon which the tracks sit. Rather, the railroad tracks were owned by Union Pacific. Accordingly, neither CBS

nor Boardman had the ability to preclude members of the public from traversing miles of railroad tracks, and imposing such a requirement would be unduly burdensome.

The consequences to the community of imposing a duty of care in these circumstances include the likelihood that there would be uncertainty regarding whether, and in what circumstances, a duty would be imposed on event planners to protect persons who are not registered participants in their event. The benefit, if any, to the community of imposing such a legal duty is uncertain. Weighing the benefit to the community of imposing a legal duty against its substantial burden, we conclude this factor does not support the imposition of a legal duty in this case. (*Rowland, supra*, 69 Cal.2d at p. 113.) Lastly, assuming insurance would be available in these circumstances, the availability of insurance does not weigh heavily in favor of imposing a legal duty of care in the circumstances of this case. (*Ibid.*)

Balancing all of the *Rowland* factors discussed above, we conclude a common law duty of care should not be imposed on CBS or Boardman in the circumstances of this case. However, the inquiry regarding duty of care does not end there. The Tuckers assert that CBS and Boardman owed Kendle a statutory duty of care pursuant to the Permit issued by the BLM to CBS, which referenced 43 Code of Federal Regulations group 8300, and included a requirement of notice to other private landowners.

The Tuckers specifically point to 43 Code of Federal Regulations parts 8365.0-1 and 8365.1-4 to assert that CBS and Boardman owed Kendle a statutory duty of care. Title 43 Code of Federal Regulations part 8365.0-1 provides the "purpose of this subpart is to set forth rules of conduct for the protection of public lands and resources, and for the protection, comfort and well-being of the public in its use of recreation areas, sites and facilities on public lands." Part 8365.1-4 provides that "(a) No person shall . . . create a risk to other persons on public lands by engaging in activities which include, but are not limited to, the following: [¶] (1) Making unreasonable noise; [¶] (2) Creating a hazard or nuisance . . . ." Although the Tuckers argue a legal duty of care is imposed by these federal regulations, they do not cite any case holding that these regulations independently establish a negligence duty of care or supplant the common law *Rowland* factor test in determining whether a defendant owes a legal duty of care in the circumstances of the particular case. Further, the Tuckers do not cite, and we do not find, any language in any federal statute, or otherwise, showing a legislative intent to create a duty of care through the federal regulations on which they base their argument.

Lastly, the Tuckers argue that the Permit imposed a duty on CBS and Boardman to notify adjacent landowners of the Poker Run. The Tuckers

claim that the notification requirement falls within the general duties owed under the above federal regulations and 43 Code of Federal Regulations parts 2932.11 and 2932.41, which relate to special recreation permits. Again, the Tuckers do not cite any authority that these regulations establish a duty of care. Even if CBS and Boardman were required to notify adjacent landowners of the Poker Run, the Tuckers have not shown that the obligation created a duty to Kendle, a nonregistered event participant. Thus, we conclude that the regulations cited by the Tuckers do not impose a legal duty of care on CBS or Boardman.

## B. *Loss of Consortium*

Here, Jeri asserts a loss of consortium claim against CBS and Boardman. Jeri's loss of consortium claim was "derivative" of Aaron's claims. (*Davis v. Consolidated Freightways* (1994) 29 Cal.App.4th 354, 358, fn. 1 [34 Cal.Rptr.2d 438].) Because we conclude that Aaron's negligence and vicarious liability claims fail, Jeri's loss of consortium claim "also fails." (*Ibid.*; accord, *Meighan v. Shore* (1995) 34 Cal.App.4th 1025, 1034 [40 Cal.Rptr.2d 744]; *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1067 [272 Cal.Rptr. 250]; *Jablonski v. Royal Globe Ins. Co.* (1988) 204 Cal.App.3d 379, 388 [251 Cal.Rptr. 160]; *Brittell v. Young* (1979) 90 Cal.App.3d 400, 407 [153 Cal.Rptr. 387].) Thus, we do not further discuss the loss of consortium claim.

## C. *Leave to Amend*

When a demurrer is sustained without leave to amend, " 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: . . . if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) The Tuckers have not met such burden in this case. Where several successive amended complaints have been vulnerable to demurrer on the same ground, the trial court may reasonably find the complaint is incapable of being amended to state a cause of action, and it is not an abuse of discretion to deny leave to amend. (*Ruinello v. Murray* (1951) 36 Cal.2d 687, 690 [227 P.2d 251].)

The Tuckers argue that they can amend their complaint to establish a statutory duty of care by including 43 Code of Federal Regulations parts 2932.11 and 2932.41. However, as set forth above, the Tuckers have amended their complaint multiple times and have failed to show that these federal regulations, or others, establish a duty of care. Accordingly, their claims fail as a matter of law and no amendment can change that result.

## DISPOSITION

The judgment is affirmed. Respondents to recover their costs on appeal.

McConnell, P. J., and McDonald, J., concurred.