### O'BRIEN v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department. June 24, 1910.)

1. MASTER AND SERVANT (§ 286*)—RAILROADS—DEATH OF TRACKMAN—JURY QUESTION—NEGLIGENCE.

   In an action against a railroad company for the death of a trackman struck by a train, *held*, under the evidence, a jury question whether the company was negligent.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010–1050; Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 137*)—RAILROADS—ENGINEER'S DUTY TO KEEP LOOKOUT.

   A locomotive engineer must keep a continuous and careful lookout for employés on the track.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 280; Dec. Dig. § 137.*]

3. MASTER AND SERVANT (§ 265*)—RAILROADS—ENGINEERS—DUTY TO KEEP LOOKOUT—EXCUSE.

   Excuse for a locomotive engineer's failure to keep a lookout for employés on the track is defensive matter, and must be established in a suit for his alleged negligence.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908; Dec. Dig. § 265.*]

4. MASTER AND SERVANT (§ 276*)—RAILROADS—DEATH OF TRACKMAN—PROXIMATE CAUSE.

   Evidence *held* sufficient to show that the proximate cause of the death of a trackman struck by a train was the speed of the train and the failure of the engineer to discover and signal the workmen on the track.

   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 276.*]

5. MASTER AND SERVANT (§ 289*)—RAILROADS—DEATH OF TRACKMAN—JURY QUESTION—CONTRIBUTORY NEGLIGENCE.

   Whether a railway track foreman was guilty of contributory negligence in attempting to save the life of a trackman by pushing him from the track in front of an approaching train *held*, under the evidence, a jury question.

   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 289.*]

Appeal from Trial Term, Orange County.

Action by Mary O'Brien, as administratrix, etc., of John O'Brien, deceased, against the Erie Railroad Company. From a judgment for defendant dismissing the complaint, and from an order denying a new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, THOMAS, and CARR, JJ.

Thomas J. O'Neill (L. F. Fish, on the brief), for appellant.
Philip A. Rorty, for respondent.

RICH, J. This action was brought to recover damages for the death of plaintiff's intestate resulting through the alleged negligence of the defendant, between whom and the deceased the relation of master and servant existed. The plaintiff's right to recover rests upon the common-law liability of the defendant as enlarged by the provisions of chapter 657 of the Laws of 1906. When the plaintiff rested

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

her case, a motion to dismiss upon the ground that there was no evidence to submit to the jury upon any issue involved in the action was granted. This appeal is from the judgment accordingly entered, and from an order denying the motion for a new trial.

The complaint alleged, among other things, as the grounds of defendant's liability, that as master it failed to furnish its servant, the deceased, with a reasonably safe place and appliances, including signals, with which to work, and failed to reasonably safeguard and protect the deceased while at work, and that defendant's employés, having the charge, custody, and control of an engine and train, negligently and carelessly conducted themselves in, and in connection with, the management and running thereof, as a result of which the engine and train ran into and killed the plaintiff's intestate.

The deceased was a track foreman, operating under a general foreman, who had general charge of all workmen. He was in charge of a few men, and was engaged in repairing and leveling the tracks of defendant's road at a place where there were three main tracks and a switch. The center one of the three was the west-bound main track known as "No. 1"; the track south was the east-bound main track, known as "No. 2." At a distance of about 780 feet east of where the men were working there was a sharp curve in the road. A train approaching from the east was in plain view of the men as soon as it rounded the curve, and the engineer at that point had an unobstructed view of the men. No precautions for the safety of the men when at work are shown to have been provided or employed. The accident occurred in broad daylight on a clear day. One Vitali, one of the workmen, was working on track No. 1, spiking its northerly rail to the ties, with his back to the east. The deceased was a little east of Vitali, and south of track No. 2. It does not appear what he was doing. There was considerable noise caused by the hammering upon the rails and spikes. While the work was in progress, and the men occupying these positions, a train came around the curve from the east on track No. 1, running at the rate of 40 miles an hour, which required less than 14 seconds to reach the place where Vitali was working. He did not see or hear the train. The deceased did, and shouted to Vitali. The warning was in time, had Vitali understood it, to advise him that a train was approaching; but he did not. The deceased, perceiving that his warning had not been understood, rushed across track No. 2, and to where Vitali was on track No. 1, and pushed him off the track, saving his life, but was himself struck by the cylinder of the locomotive and killed. No signal or warning was given by bell or whistle, or in any other manner. The engineer testified that he did not see the workmen on the track, and did not know of the accident until the train reached Port Jervis, where he was informed of it.

I think this evidence established a prima facie case entitling the plaintiff to go to the jury, and that the exception to the ruling of the learned trial court dismissing the complaint was well taken. The negligence relied upon by the plaintiff was the negligence of the engineer, who at common law was a fellow servant of the deceased, for

whose negligence the defendant was not liable; but by chapter 657 of the Laws of 1906, the engineer was made a vice principal, for whose negligence the defendant is liable. I conceive it to be the duty of an engineer to keep a continuous and careful lookout on the track ahead of his engine at all times when his train is in motion. The safety of any person lawfully upon or near the tracks of the road, and the safety of the passengers upon the train, demand this, and no more important duty is demanded of any railroad employé. In a given case circumstances may exist excusing a failure to keep a constant lookout; but, if they do, they must be established as a defense upon the trial. It is plainly apparent from the evidence before us that the engineer was at the time of the accident neglecting this duty, for after rounding the curve his train ran 780 feet before reaching the place where the men were working.

It is argued that neither the speed of the train nor the failure to discover and signal the workmen gives to the plaintiff a cause of action, because neither of such acts was the proximate cause of the death of plaintiff's intestate. I do not agree with this contention. The peril to which Vitali was exposed was created by the failure of the engineer to discharge his duty of keeping a lookout on the tracks in front of his engine, discovering the workmen, and giving them warning of the approach of his train. The great speed at which it was running, and the curve in the road, increased the degree of care required at the place of the accident. The peril to which Vitali was exposed was the cause of the deceased going upon the track upon which the train was approaching to endeavor to save the former's life, and the peril to which the deceased thus exposed himself was the natural consequence of the situation. The deceased was not a trespasser or licensee, but an employé acting under the directions and orders of the defendant; and, the defense of "fellow servant" being eliminated by the statute, proof of facts warranting the jury in finding negligence on the part of the defendant, through the reckless management of the train by its engineer, established a prima facie case, if such negligence of the engineer was the proximate cause of the death of plaintiff's intestate.

The case seems to me well within the reasoning of the Court of Appeals in Gibney v. State of New York, 137 N. Y. 1, 33 N. E. 142, 19 L. R. A. 365, 33 Am. St. Rep. 690, in which the facts were that the plaintiff, her husband, and child, while crossing a bridge over a canal, met an acquaintance whom the parents stopped to talk with. While engaged in conversation, the child fell through an opening of the railing of the bridge into the canal. The father plunged into the canal to save the child, and both were drowned. The Attorney General contended that the negligence of the state in permitting the bridge to remain in an unsafe condition, while it might be held to have been the cause of death of the child, was not the cause of death of the father. The court held that:

"While the immediate cause of the peril to which the father exposed himself was the peril of the child, for the purpose of administering legal remedies, the cause of the peril in both cases may be attributed to the culpable negligence of the state in leaving the bridge in a dangerous condition. * * *

We think it may be justly said that the death both of the child and parent was the consequence of the negligence of the state, and that the unsafe bridge was in a legal and judicial sense the cause of the drowning of both. We can perceive no sound distinction between this case and the Eckert Case, 43 N. Y. 502, 3 Am. Rep. 721. In that case the railroad train was being propelled at a dangerous speed. The negligence was active. In this case it consisted of an omission; that is, in the failure to originally construct the bridge properly, or permitting it to become dangerous. We do not perceive how the difference in the circumstances of the negligence affects the question of the proximateness between the cause and the result, so as to distinguish in this respect the two cases."

The deceased was not negligent, as matter of law, in endeavoring to save the life of Vitali, as was distinctly held in the Eckert Case, since followed in Spooner v. D., L. & W. R. R. Co., 115 N. Y. 22, 21 N. E. 696; Gibney v. State of New York, supra; Manthey v. Rauenbuehler, 71 App. Div. 173, 75 N. Y. Supp. 714; Manzella v. Rochester Ry. Co., 105 App. Div. 12, 93 N. Y. Supp. 457. The Court of Appeals, in Miller v. Union Railway Co., 191 N. Y. 77, 83 N. E. 583, state the rule thus:

"While, for the purpose of saving human life or limb, a person is justified in voluntarily taking risks or hazards which, except for the object to be attained, would plainly stamp his conduct as negligent, still, even for so noble a purpose, he cannot rashly or recklessly disregard all consideration of his own personal safety."

Under this rule, the question of contributory negligence on the part of plaintiff's intestate was for the jury.

The judgment and order must be reversed, and a new trial granted; costs to abide the event.

HIRSCHBERG, P. J., and WOODWARD, THOMAS, and CARR, JJ., concur. HIRSCHBERG, P. J., also concurs for the additional reason of the error at folio 61 in excluding proof of the orders given to the deceased by the general foreman.