(78 Misc. Rep. 563.)

### GINSBURG v. WOLF et al.

(Supreme Court, Trial Term, New York County. December, 1912.)

MASTER AND SERVANT (§ 287*)—INJURIES TO SERVANT—INCOMPETENT FELLOW SERVANT—PROMISE TO DISCHARGE.

Where neglect of a fellow servant working with plaintiff, a minor, at a machine, was the cause of plaintiff's hand being caught and injured, and defendant prior to the accident had promised to discharge the incompetent fellow servant, motions to dismiss the complaint on the evidence and, after verdict for plaintiff, for a new trial, will be denied.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1051–1067; Dec. Dig. § 287.*]

Action by Harry Ginsburg, by Rachel Ginsburg, guardian ad litem, against Harry Wolf and Charles Wolf, copartners doing business under the firm name and style of the New York Embossing Company. On motions to dismiss complaint on the evidence and, after verdict for plaintiff, for a new trial. Motions denied.

I. Hershfield, of New York City, for plaintiff.
B. L. Pettigrew, of New York City, for defendants.

PENDLETON, J. The action was for negligence. Plaintiff's hand was caught between the two plates of the machine. Motions were made to dismiss the complaint on the evidence and, after a verdict for the plaintiff, for a new trial. There was evidence to support the contention, and it must be assumed that the promise to discharge the incompetent fellow servant was made and plaintiff was requested to continue work, and that the fellow servant was negligent in failing to push the leather through, and that plaintiff was free from negligence, all as claimed by plaintiff. The danger was due to the risk involved in plaintiff's putting his fingers between the plates, necessitated by the failure to push the leather through. If the promise had been to relieve the risk by supplying a tool or appliance for pulling out the leather without inserting the fingers, the case would have been on all fours with the case of Rice . v. Eureka Paper Co., 174 N. Y. 385, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585, where the promise was to supply a band shifter. The promise to relieve the risk by substituting a competent man, who would push the leather through, involves no different principle. In both cases the promise was to furnish relief from the risk, and the injury was due to the failure to do so.

Defendant contends the risk was both known and obvious. In cases such as this, that the risk was known or obvious is not ma-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

terial. The danger in cases of complaint by an employé and promise of remedy by an employer is always known; otherwise the complaint and promise would have no meaning. The promise by the employer, or request or other inducement to continue after notice, constitutes an agreement by the employer not to claim, or a waiver of the assumption of risk by the employé growing out of the fact that it is known or so obvious as to be the equivalent of actual knowledge, and shifts the assumption of risk from the employé to the employer. Rice v. Eureka Paper Co., 174 N. Y. 385, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585; Citrone v. O'Rourke Eng. Const. Co., 113 App. Div. 518, 99 N. Y. Supp. 241, reversed on another ground. 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340; Lobasco v. Moxie Nerve Food Co., 127 App. Div. 677, 111 N. Y. Supp. 1007; Stokes v. Barber Asphalt Paving Co., 134 App. Div. 363, 119 N. Y. Supp. 37; Leaux v. City of New York, 87 App. Div. 405, 84 N. Y. Supp. 511.

Defendant urges that the promise was to discharge Gramitsky on Saturday, i. e., the day following, and that until time for performance of the promise and default the risk was the employé's. The rule is, however, that the promise by the employer is in effect an agreement to waive any claim of assumption of risk by the employé *for the period set by the promise,* or, if no time for performance is fixed, until the expiration of a reasonable time for performance after the making of the promise. See cases supra. The inducing of the employé to continue is the foundation of the inference of the employer's agreement to assume the risk.

Defendant also contends that the act of Gramitsky was not the proximate cause of the injury, but the failure of the plaintiff to take his fingers out in time. The plaintiff was placed by Gramitsky's act in a place of danger, to wit, inserting his fingers between the plates. In that position he was required to exercise due care. This he did, as the jury has found. It is doubtless true that, if plaintiff had withdrawn his fingers in time, the injury would not have occurred. This might be regarded as the immediate cause, but the originating cause was the act of Gramitsky. When there is a break in the chain of causes by the intervening of a new agency, the question as to whether the original cause is the proximate cause, as the term is used in law, depends on whether the accident is within the ken of reasonable prudence or foresight, that is, might reasonably be apprehended as a result of the original cause. If so, it is deemed the natural consequence, and the original cause is the proximate cause. Gibney v. State of New York, 137 N. Y. 1, 33 N. E. 142, 19 L. R. A. 365, 33 Am. St. Rep. 690; O'Brien v. Erie R. Co., 139 App. Div. 291, 123 N. Y. Supp. 1040; Leeds v. New York Tel. Co., 178 N. Y. 118, 70 N. E. 219; Rowley v. Newburgh Light, Heat & Power Co., 151 App. Div. 65, 135 N. Y. Supp. 944.

In this case the original cause was the act of Gramitsky in not pushing the leather through. That the plaintiff would be compelled to put his fingers between the plates of the machine and might

be caught is certainly within the above rule, and under the above authorities the act of Gramitsky must be deemed the proximate cause of the accident. In Gibney v. State of New York, 137 N. Y. 1, 33 N. E. 142, 19 L. R. A. 365, 33 Am. St. Rep. 690, a father and a child were on a defective bridge. The child fell through, and the father, in an effort to save the child, was drowned. It is urged that, while the negligence in maintaining a defective bridge was the cause of the child's death, it could not be regarded as the cause of the father's death. The court says:

"But while the immediate cause of the peril to which the father exposed himself was the peril of the child, for the purpose of administering legal remedies, the cause of the peril in both cases may be attributed to the culpable negligence of the state in leaving the bridge in a dangerous condition. There is great difficulty in many cases in fixing the responsible cause of an injury. When there is a break in the chain of causes by the intervention of a new agency, and then an injury happens, is it to be attributed to the new element; and is this to be treated as the originating cause, to the exclusion of the antecedent one, without which no occasion would have arisen for the introduction of a new element? It is impossible to formulate a rule on the subject capable of definite and easy application. The general rule is that only the natural and proximate results of a wrong are those of which the law can take notice. But where a consequence is to be deemed proximate within the rule is the point of difficulty. In this case these elements are present: Culpable negligence on the part of the state; the falling of the child into the canal through the opening which the state negligently left in the bridge; the natural and instinctive act of the father in plunging into the canal to rescue the child; the drowning of both; the fact that such an accident as that which befell the child might reasonably have been anticipated as the result of the condition of the bridge; and the further consideration that a parent or other person, seeing the child in the water, would incur every reasonable hazard for its rescue. We think it may be justly said that the death both of the child and parent was the consequence of the negligence of the state, and that the unsafe bridge was in a legal and juridical sense the cause of the drowning of both."

In the case of O'Brien v. Erie R. Co., 139 App. Div. 291, 123 N. Y. Supp. 1040, decedent, who was working upon the tracks of the railroad company, tried to warn a fellow workman of the danger from an approaching train. For that purpose he went upon the track and was killed. It was held that the negligence of the defendant in the operation of the train was the proximate cause of the death, citing above case of Gibney v. State of New York, 137 N. Y. 1, 33 N. E. 142, 19 L. R. A. 365, 33 Am. St. Rep. 690. In the case of Burns v. City of Yonkers, 83 Hun, 211, 31 N. Y. Supp. 757, the injury was due to a balking horse backing over a defective embankment. Held, the negligence in maintaining the defective embankment was the proximate cause of the accident.

Motions denied, 30 days' stay, and 30 days to make a case.

Motions denied.