### HOLLARAN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   May 7, 1915.)

1. MUNICIPAL CORPORATIONS ☞706—USE OF STREETS—RUNAWAY—INFERENCE OF NEGLIGENCE.

   The fact that a team of horses was running away, unattended, down a reasonably crowded city street, is sufficient to support an inference of negligence on the part of the owner or driver, since it is the exception and not the rule that a team properly driven or properly tied, when left alone, does run away, and the burden is on the owner to show that this case was one of the exceptions.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. ☞706.]

2. MUNICIPAL CORPORATIONS ☞706 — USE OF STREETS — LIABILITY — QUESTION FOR JURY.

   In an action for the death of a strong, healthy man, who was killed while attempting to stop a team hitched to a heavy street sweeper, which

was running away down a reasonably crowded street, it is a question for the jury whether the deceased was justified by the circumstances in attempting to stop the team; it not being necessary, to justify such an act, that the danger threatened some one whom deceased was bound to protect, or even that it threatened any particular individual.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. ☞706.]

Appeal from Trial Term, Kings County.

Action by Mary C. Hollaran, as administratrix of the estate of Michael J. Hollaran, deceased, against the City of New York. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, STAPLETON, and RICH, JJ.

Edward A. Freshman, of Brooklyn (Thomas F. Magner, of Brooklyn, on the brief), for appellant.

Pierre M. Brown, of New York City (William F. Purdy, of New York City, on the brief), for respondent.

THOMAS, J. Defendant's team of horses, attached to a street sweeper and unattended by a driver, were running away on Third avenue, in the borough of Brooklyn. The plaintiff's intestate attempted to seize the reins and stop the horses, but was carried under the sweeper and killed. There are two questions: (1) Whether the fact of the horses running way is of itself sufficient evidence that the defendant was negligent; (2) whether there was such imminent danger to life as justified the undertaking.

[1] The defendant's proposition is that the fact of a team of driverless horses running through a busy street in a city is consistent with the hypothesis that they escaped from a driver using requisite care, and that the burden is on the plaintiff to negative such care. It is abnormal for horses without a driver to travel in a public street, and it is none the less so if they are running away. Horses are required to be attended or hitched, because experience teaches that under such conditions their escape is exceptional and contrary to the usual order of events. Where, then, they are found loose and unattended, the primary inference is that the attendance or fastening that commonly precludes escape was absent. It is true that experience also shows that animals escape the mastery of prudent and skillful custodians, but such happenings are anomalous. The question, then, is what inference should be drawn from a phenomenon that deviates from the general, and falls into the exceptional, experience. The general truth is that hitched and attended horses remain secure, but exceptions arise. Why should we infer that the general rule does not prevail, and that the exception is present? If the owner of the horses asserts that his case comes within the exception, as in analogous cases, he has the burden of showing it. He should in that case show that he was not culpable in keeping them, inasmuch as they traveled in violation of common and safe usage. I conceive that one incumbering a street to the injury of those lawfully using it has no presumptive right to immunity, and yet such would be the case if the owner need not account

for the failure of his custody of his property, and may be regarded as prudent until a party run down in the street shall have traced the incident and revealed what the owner and his servant had negligently done or omitted, and of which the one or the other has knowledge. The highway was misused; due care usually prevents such violation of it; the owner, through himself or his servant, knows whether he did what amounts to such care. Let him, then, show that he did the requisite things, but without avail, or that there is excuse for failure to do them.

The authorities are not in accord on this question, nor do I attempt to reconcile decisions. In this court it has been decided that the fact of horses running unattended in the street is sufficient evidence of negligence; that is, that thereby a prima facie case is presented.. The rule was definitely stated in Kelly v. Adelmann, 72 App. Div. 590, 76 N. Y. Supp. 574. It is suggested that the decision rests, not upon reasoning, but upon the authority of Pearl v. Macaulay, 6 App. Div. 70, 39 N. Y. Supp. 472, and Doherty v. Sweetser, 82 Hun, 556, 31 N. Y. Supp. 649; and that the facts in neither case make it authority for the rule stated. The facts in the second case are somewhat different, but the rule in Kelly v. Adelmann is held distinctly. The decision follows the expressions in Unger v. Forty-Second Street, etc., R. R. Co., 51 N. Y. 497, 500. The appellant prefers the decision in Gootwald v. Bernheimer, 6 Daly, 212. The opinion of Judge Joseph F. Daly approves of the rule for which appellant contends. There is also reference to an apparent approval of Gootwald v. Bernheimer and its holding in McGahie v. McClennen, 86 App. Div. 263, 83 N. Y. Supp. 692, but it was upon the point "that the mere running away of a team of horses does not necessarily imply negligence on the part of the *driver*," who was driving at the time. There is also other authority for the present decision. Hummell v. Wester, Brightly, N. P. (Pa.) 133; Gannon v. Wilson, 18 Wkly. Notes Cas. (Pa.) 7 (in the last two cases the horse was running on the sidewalk); Gorsuch v. Swan, 109 Tenn. 36, 69 S. W. 1113, 97 Am. St. Rep. 836. See, also, Strup v. Edens, 22 Wis. 432, and Elliott's Roads and Streets, § 842.

[2] It is also questioned whether plaintiff's decedent was justified by impending danger to persons in the street and by the situation presented in exposing himself to the peril of attempting to stop the horses. The horses were running in a measurably busy street, and there was ample opportunity for harm to come to some one, although the danger was not at the moment imminent to a definite person. In Gibney v. State, 137 N. Y. 1, 33 N. E. 142, 19 L. R. A. 365, 33 Am.. St. Rep. 690, a father jumped in a canal to save his child. In that case the relation of the parties was sufficient to prompt the deed, which resulted, not only from a sentiment of affection, but also from a sense of duty, or, as the court said, it was "natural and instinctive." But the principle does not rest upon such relation, for in numerous instances the rescuer was a stranger to the endangered, as, for instance, in Muhs v. Fire Insurance Salvage Corps, 89 App. Div. 389, 85 N. Y. Supp. 911. Nor is it necessary that the person in peril should be incapable by age of appreciating his danger, as in Eckert v. Long Island R. R. Co., 43 N. Y.

502, 3 Am. Rep. 721, where an infant was exposed to an oncoming locomotive; for in O'Brien v. Erie R. R. Co., 139 App. Div. 291, 123 N. Y. Supp. 1040, an adult was saving an adult. Nor is it necessary that the danger should have reached or menaced a particular person, for in Manthey v., Rauenbuehler, 71 App. Div. 173, 75 N. Y. Supp. 714, there was danger threatened generally to children in the street in a tenement house neighborhood and near schools. In the case at bar, horses with a street sweeper were dashing ungoverned through the street, and the jury was justified in inferring that, if they continued unchecked, harm would come to some one. Indeed, that apprehension would come to the mind of any rational and well-disposed person. The question, then, is whether a man strong in courage and capable physically should be content to let the probably destructive agency go its way or attempt to stop it. It is not necessary to let admiration for the deed influence our judgment of its rational nature. In the Eckert and Muhs Cases it is said that the person attempting the service was under a duty to rescue the person in danger. Such sense of duty is based upon feelings of the highest value. Whether it was or was not culpable to obey the prompting to that duty depends upon the conditions presented. It is a choice between strong and brave men keeping themselves in assured safety and letting the horses make their hurtling away unchecked, or using efforts as prudently as the occasion permits to avert it. In the present instance, it was a fair question for the jury whether the venture of the decedent was justified by the circumstances.

The judgment and order should be affirmed, with costs. All concur.