AMERICUS J. LEONARD et al., Doing Business under the Firm Name of LEONARD, BURKE & COMPANY, Respondents, v. S. G. FRANTZ Co., INC., et al., Appellants.

First Department, June 28, 1944.

*Hamilton Hicks* for appellants.

*Jesse Perlmutter* for respondents.

DORE, J.   Plaintiffs, contractors to build cranes for Navy yards and shipyards engaged in war work, employed defendants to manufacture brakes used on the cranes to prevent loads from falling.   The corporate and individual defendant Frantz had been engaged in the manufacture of a magnetic separating device called the " Frantz Ferro-Filter " and continued that work in part while also engaged in making crane brakes for plaintiffs.

When the contract terminated, plaintiffs sued defendants for claimed overpayments totalling $19,276.08.   Defendants, denying any overpayment, counterclaimed for $14,962.78 as still due and unpaid.   After trial before the court without a jury, the trial court accepted defendants' figures except as to " amounts allocated to executive salaries " on which he allowed only 20%; he found plaintiffs had paid defendants for the brake job $47,850.82; that defendants should have received only $45,316.13, and accordingly, dismissing defendants' counterclaim on the merits, he gave judgment to plaintiffs for the difference or $2,534.69.   The corporate defendant and the individual defendant Samuel G. Frantz, president and owner of 90% of the stock of the corporate defendant, appeal.

Beginning in May, 1942, there were preliminary agreements and transactions between the parties relating to the crane brake job but these earlier arrangements were superseded by a written contract between the parties dated November 9, 1942. Defendants did make a subsequent offer to the Navy Department on December 17, 1942, to manufacture 119 crane brakes on other terms; but that offer was not accepted by the Navy or by plaintiffs.   On this record we rule that the rights and obligations of the parties are governed by the contract plaintiffs accepted in writing on November 9, 1942.

The contract provided that defendants were to make and deliver to plaintiffs 26 crane brakes for which they were to receive no profit but payment of all " costs " including a reasonable provision for overhead, " based on the same proportionate division " between the brake job and defendants' regular work " as direct factory labor on the load brake job is to direct factory labor " on defendants' regular work. The parties agreed that defendants were to submit to plaintiffs auditor's statements including a final statement on completion of the 26 brakes and within ten days thereafter plaintiffs were to pay defendants " the entire cost of the whole job from the beginning, less previous payments." Defendants were then to return to plaintiffs all machinery and tools plaintiffs had loaned and all materials charged to the job in excess of what was required to complete the 26 brakes. Items of engineering and drawing were fixed at the agreed value of $4,000 " to be included as part of the cost of the job and not subject to audit." The parties expressly agreed that all other items were to be based on defendants' " records of the job ", to which plaintiffs' representative was to be given access.

After delays, which each side charges to the other, and other controversies between the parties, defendants did complete the 26 brakes called for by the contract and made final delivery of that total number on or about January 22, 1943.

In March, 1943, the Navy requisitioned from defendants and delivered to plaintiffs all the partly fabricated load brakes and parts then on defendants' premises. Defendants established at the trial that they had previously delivered to plaintiffs a considerable number of additional parts of incompleted load brakes; the borrowed tools and machinery were also returned.

Defendants contend that they substantiated all their costs and that the trial court erred in reducing executive salaries by 80%. Claiming a mathematical error in the trial court's own computation, they urge they are entitled to judgment for at least $4,776.68; and on the whole record they ask for $14,962.78, the difference between defendants' claimed total costs of $62,813.60 as shown by their records and the $47,850.82 plaintiffs concededly paid.

Plaintiffs contend that the phrase " executive salaries " in the trial court's opinion means administrative expenses, that the court made no mathematical error, and that the record more than supports the finding in plaintiffs' favor for $2,534.69.

This lengthy record involves a multitude of cost accounting and manufacturing issues and figures. Both sides agree, how-

ever, that the total manufacturing costs for material and direct labor, exclusive of all overhead, was $35,858.90. The disputed issues therefore relate only to the " costs " for overhead, including administrative expenses (of which executive salaries are a part) and allocation of the proper proportion of such costs to the brake job under the terms of the contract.

Defendants furnished to plaintiffs periodically itemized statements covering all costs, including overhead, administrative expenses and executive salaries, allocated to the brake job in specified percentages based on the formula for allocation set forth in the contract. Defendants' records were made available to plaintiffs, time cards and the working sheets of defendants' accountant were also made available to plaintiffs' accountant. During the trial, payroll records and time cards were produced in court. Plaintiffs' accountant, who claimed failure on defendants' part to present statements indicating the extent of their auditor's verification, admitted that he did not call for time cards, payrolls or other data that would substantiate or contradict defendants' schedules. The trial court did not grant plaintiffs' motion to strike out certain of the exhibits; accordingly he necessarily found that they were properly connected.

The manufacture of the crane brakes required great precision and skill. The brakes redesigned and produced by defendants were conceded by plaintiffs to be without question satisfactory according to specifications; not a single failure was reported up to the time of the trial. Plaintiffs later completed a large number of additional brakes using in part the material defendants had returned. Defendants' initial work preparatory to building the first brakes under the specifications exceeded the average cost thereafter.

After reading the record, the exhibits and the briefs, we sustain the trial court's acceptance of defendants' figures except certain items for selling, advertising and professional services totalling $3,569.42. Such items may be proper in some war contracts but we think under the facts here disclosed they were not justified. Using for these items the same percentages of allocation to the brake job as the trial court accepted for all other items (except executive salaries) we accordingly disallow $2,294.69 out of the total of defendants' claimed costs of $62,813.60, thus reducing that total to $60,518.91.

We also sustain the trial court's disallowance of the amounts allocated to executive salaries except a credit of 20%. The ratio from time to time during the job between officers and their salaries and workmen and their wages was unreasonably out of proportion; executive salaries were also unnecessarily

raised during the job; and one officer who received $400 a month contributed practically nothing to the work. These and other facts in the record lead us to the conclusion not to disturb the trial court's ruling on the amount of executive salaries properly allocated to the brake job.

Plaintiffs' contention that when the trial court in his opinion spoke of " executive salaries " he meant " administrative expenses ", is overruled as without merit. The two terms are not synonymous either in accounting practice or in fact. The term " executive salaries " means the salaries of officers only; the term " administrative expenses " covers many items, such as salaries of office clerks and stenographers, expenses for office supplies, payroll taxes, telephone, telegraph, etc. The distinction is specifically illustrated in the detailed figures in defendants' various statements furnished to plaintiffs from time to time during the work.

The total costs as above corrected amount to $60,518.91. Of this sum the total of executive salaries allocated to the brake job was $11,159.90. The trial court expressly held that from allocated executive salaries 80% should be deducted. Analysis of the figures indicates, however, that he did not take the 80% deduction only on such allocated salaries. That percentage of $11,159.90 is $8,927.92. Deducting that amount from $60,518.91, the total costs as above corrected, reduces the remaining costs to $51,590.99; plaintiffs paid $47,850.82; the difference between those two sums is $3,740.17.

On appeal from a judgment rendered by the court without a jury, unless we affirm we should, under subdivision 2 of section 584 of the Civil Practice Act, grant the judgment which the court below ought to have granted. We find on the basis of the trial court's decision as above corrected and on the whole record that judgment should be entered in defendants' favor on their counterclaim for $3,740.17.

The judgment appealed from should be reversed, with costs, plaintiffs' complaint against both defendants dismissed on the merits, and judgment entered for defendant-appellant S. G. Frantz Co., Inc., on its counterclaim in the sum of $3,740.17, with costs.

MARTIN, P. J., GLENNON, UNTERMYER and COHN, JJ., concur.

Judgment unanimously reversed, with costs, plaintiffs' complaint against both defendants dismissed on the merits, and judgment entered for defendant-appellant S. G. Frantz Co., Inc., on its counterclaim in the sum of $3,740.17, with costs. Settle order on notice.