EDGAR BERNARDINE, Appellant, *v.* CITY OF NEW YORK, Respondent, et al., Defendants.

First Department, December 15, 1944.

*James R. Lyttle* for appellant.

*Murray Sendler* of counsel (*Ignatius M. Wilkinson, Corporation Counsel*), for respondent.

Dore, J. Plaintiff maintains this action against the City of New York for damages for personal injuries caused by a runaway police horse which plaintiff stopped on a public highway. The court, at Trial Term without a jury, dismissed the complaint as to defendant the City of New York at the close of the entire case solely on the ground that as a matter of law the 1941 amendment of section 50-b of the General Municipal Law did not extend the statutory waiver of governmental immunity to negligence in the " operation " of a city-owned police horse.

Sections 50-a, 50-b and 50-c of the General Municipal Law, and the predecessor statute, section 282-g of the Highway Law (added by L. 1929, ch. 466), withdrew from municipal corporations their governmental immunity for the torts of their employees acting in the discharge of their duties within the scope of their employment. These statutes were enacted in response to " a rising tide of criticism against the doctrine of sovereign irresponsibility " (*Miller* v. *Town of Irondequoit*, 243 App. Div. 240). Prior to 1941, section 50-b provided that the City should be liable for its employee's negligence in the operation of a municipally-owned vehicle and should save the employee harmless. The 1941 amend-

ment enlarged and further extended the waiver of immunity by adding after the word " vehicle " the words " or other facility of transportation " (L. 1941, ch. 852, in effect April 28, 1941). This amendment, not in effect at the date involved in our prior decision (*Douglass* v. *City of New York,* 266 App. Div. 717), was in effect on November 8, 1941, the time of the accident now before us.

While the section is remedial in character, it is also in derogation of the common law and must be strictly construed. We think, however, we do not " go beyond the clearly expressed provisions of the act " (2 Lewis' Sutherland on Statutory Construction [2d ed.], § 547) when we hold that a horse used, as this police horse concededly was, to facilitate transportation of a mounted policeman in the course of his duties, is " a facility of transportation." No amount of statutory exegesis can argue away that plain matter of fact. Accordingly, the dismissal on the ground stated was error.

This action was fully tried before the court without a jury. Evidence was adduced on all the issues, including negligence, alleged contributory negligence, assumption of risk and damages. The salient issues of fact, the main outlines of what actually happened, are not really in dispute. But the inferences that should be drawn from the facts are disputed. Subdivision 2 of section 584 of the Civil Practice Act provides: " On an appeal from a judgment rendered in an action tried by the court without a jury, the appellate court, unless it shall affirm the judgment, shall so far as practicable, grant the motion for judgment which the court below ought to have granted." In *Waddle* v. *Cabana* (220 N. Y. 18, 24) the Court of Appeals said that on an appeal from a judgment entered on the decision of the trial court without a jury " the Appellate Division may deal with the evidence as the trial court should have done and may render final judgment accordingly without granting a new trial. (Code Civ. Pro.,§ 1317; *Lamport* v. *Smedley,* 213 N. Y. 82; *Acme Realty Co.* v. *Schinasi,* 215 N. Y. 495.) " Cardozo, J., in *Lamport* v. *Smedley* (*supra,* decided Nov. 10, 1914) writing for a unanimous court on the effect of the 1912 amendment to section 1317 of the Code of Civil Procedure (L. 1912, ch. 380) said: " The purpose of this amendment is not doubtful. In equity causes, before the days of code practice, the appellate court was not constrained upon reversal to order a new trial, but might proceed to render whatever new decree the justice of the case required. [Citing cases.] The Appellate Division has now been reinvested with that power. Indeed, the power has been

extended, for it applies to all actions and proceedings whether equitable or legal, except where the trial under review has been before a jury. * * * The Legislature did not have in view a vain and nugatory enactment. It intended to work an important reform in procedure, and its purpose ought not to be thwarted by any narrow construction." (Pp. 85–86.)

In *Middleton* v. *Whitridge* (213 N. Y. 499) — a death action based on defendant's alleged negligence, tried before a jury — the Court of Appeals, reversing the Appellate Division's dismissal and directing a new trial, said (January 12, 1915) per MILLER, J.: " That the Appellate Division has the power under section 1317 of the Code of Civil Procedure to make new findings of fact and a final adjudication on the merits in a case triable by the court has been definitely decided by this court. (*Bonnette* v. *Molloy,* 209 N. Y. 167; *Lamport* v. *Smedley,* 213 N. Y. 82.)" (P. 506.)

The " important reform in procedure " the purpose of which ought not be " thwarted by any narrow construction " (*Lamport* v. *Smedley, supra,* p. 86) was later in 1925 incorporated into the judiciary article of the Constitution. (N. Y. Const., art. VI, § 8.) Indeed, the form in which it was adopted by the People in 1925 extended the power of appellate courts to grant final judgment, as may be seen by a comparison of (1) the Code provision (Code Civ. Pro., § 1317); (2) its exposition in *Middleton* v. *Whitridge (supra)*, and (3) the text of article VI, section 8, of the State Constitution drafted and adopted in 1925. In a case such as this, tried by the court without a jury, there should be no doubt of this court's power to make a final adjudication on the merits in the light of the Constitutional amendment of 1925, its genesis in section 1317 of the Code of Civil Procedure and the explicit language of subdivision 2 of section 584 of the Civil Practice Act. We have illustration in this court of the exercise of that power. (*Leonard* v. *Frantz Co.,* 268 App. Div. 144, 148; *Clark* v. *Standard Rock Asphalt Corporation,* 233 App. Div. 536, 539; *Karpas* v. *Bandler,* 223 App. Div. 306.) Accordingly we should now rule on the issues of fact not considered by the trial court because of its dismissal on the law.

Plaintiff's proof that the city's horse was running away unattended on the public highway established prima facie proof of defendant's negligence. In *Hackett* v. *Lenox Sand & Gravel Co.* (187 App. Div. 211) the plaintiff was injured in attempting to stop a runaway horse; reversing the trial court's dismissal of the complaint on a directed verdict, this court said: " The fact

that the horse was running away made a prima facie case of negligence. This called upon the defendant to give satisfactory reason why the horse was unattended." The rule is illustrated in numerous analogous decisions. (*Doherty* v. *Sweetser*, 82 Hun 556 [VAN BRUNT, P. J.]; *Pearl* v. *Macaulay*, 6 App. Div. 70 [CULLEN, J.]; *Kelly* v. *Adelmann*, 72 App. Div. 590 [WILLARD BARTLETT, J.]; *Hollaran* v. *City of New York*, 168 App. Div. 469.)

Defendant adduced proof to explain how the horse came to be a runaway on the public highway. The place where the officer started to mount the horse was near the intersection of River Avenue and 161st Street, Bronx, under the elevated railway structure near the Yankee Stadium where at the time in question a football game was in progress. Defendant's witness stated that the noises in the street at the time were only " the ordinary noises." No facts were shown indicating any immediate need for mounting at the particular time and place. While the policeman had a firm grip on the reins in the act of mounting and indeed when he had almost mounted and his right foot was about level with the top of the saddle, the horse lunged or leaped forward, threw the officer and ran away. The horse ran north on River Avenue to a point between 167th and 168th Streets where it was galloping when plaintiff stopped it. The evidence defendant offered was insufficient in our opinion to meet the prima facie case of negligence made out by plaintiff. Indeed on all the facts disclosed, defendant's purported explanation of how the horse came to be unattended on the public highway confirmed rather than explained away plaintiff's proof of defendant's negligence. (Cf. Restatement, Torts, § 438; *Hackett* v. *Lenox Sand & Gravel Co.*, *supra*.)

Plaintiff had long years of experience in handling horses. He demonstrated his skill on the occasion in question by his success in stopping this very runaway twice on the same street. Traffic was moving north and south at the time the horse was galloping in a northerly direction on the westerly or southbound side of the avenue; there were people about and ample opportunity for harm to come to persons in the street. After considering all the evidence, including the above facts, we hold that plaintiff, thus acting in an emergency not created by his own antecedent negligence, was not guilty of contributory negligence or unreasonable assumption of risk in attempting, as he did, to stop the runaway horse. (*Hollaran* v. *City of New York*, 168 App. Div. 469, *supra; Lowery* v. *Manhattan Railway Co.*, 99 N. Y. 158, 163; Restatement, Torts, §§ 466, 472, 893, comment *c*.)

In the *Hollaran* case (*supra*) affirming a jury's verdict in favor of plaintiff, a bystander who was injured while attempting to stop defendant's runaway horses, the court said: "In the case at bar, horses * * * were dashing ungoverned through the street, and the jury was justified in inferring that if they continued unchecked, harm would come to some one. Indeed, that apprehension would come to the mind of any rational and well-disposed person. The question, then, is whether a man strong in courage and capable physically should be content to let the probably destructive agency go its way or attempt to stop it. * * * It is a choice between strong and brave men keeping themselves in assured safety and letting the horses make their hurtling way unchecked, or using efforts as prudently as the occasion permits to avert it. In the present instance it was a fair question for the jury whether the venture of the decedent was justified by the circumstances." (Pp. 472–473.)

The accident happened on November 8, 1941; the trial was held November 1 and 3, 1943. Plaintiff adduced adequate medical and other proof of his damages. Defendant, though ample opportunity was afforded, did not offer any medical testimony or adduce any evidence on the issue of plaintiff's injuries, expenses or loss of wages. No claim is made of facial disfigurement or similar injury. "Upon a trial by the court without a jury, each party shall be deemed to have made a motion for judgment in his favor." (Civ. Prac. Act, § 440.) Plaintiff asks for judgment, not a new trial; and a new trial is not necessary. On this record it is entirely practicable for this court, under subdivision 2 of section 584 of the Civil Practice Act to grant the judgment the trial court should have granted in plaintiff's favor. In view of the extent of plaintiff's injuries, including a fracture of the right femur, two operations, confinement to hospitals for treatment, permanent shortening of his right leg, inability to work for a long period and consequent loss of wages, medical expenses, pain and suffering, plaintiff is entitled to judgment against defendant in the sum of $12,500, with costs and disbursements.

Plaintiff at trial consented to dismissal of the complaint against the individual defendant, the policeman, because of conceded failure to serve notice of claim on that defendant. (General Municipal Law, § 50-c.) The City's contention, raised for the first time on appeal, that such failure to serve the police officer is fatal to plaintiff's claim against it is overruled. Because (apparently inadvertently) section 50-a was not amended in 1941 as section 50-b was, this plaintiff, unlike

the plaintiff in *Kosiba* v. *City of Syracuse* (287 N. Y. 283), must recover under section 50-b if he is to recover at all. (*Douglass* v. *City of New York,* 266 App. Div. 717.) To recover under section 50-b, the notice provisions of section 50-c must be complied with. So far as relevant and stripped of unnecessary verbiage, those provisions require that "no action * * * shall be maintained against said municipality *and* appointee" (italics ours) unless notice is filed "with the comptroller * * * and with the appointee * * *." By reason of the consent dismissal against the appointee, this action is not being maintained against the City *and* the appointee but against the City alone. As the City is bound under section 50-c to save the employee harmless, notice to the Comptroller is mandatory even if the City is not made a party defendant. (*Gwydir* v. *Cowdell,* 266 App. Div. 853, affd. 291 N. Y. 777.) But the converse is not true, i.e., where the City alone is sued and proper notice has been given the Comptroller. Section 192 of the Civil Practice Act provides that no action shall be defeated by misjoinder of parties and parties misjoined may be dropped at any stage of the cause as justice may require. The City and its employees were joint tort-feasors but the City under section 50-b as well as section 50-c was bound to indemnify its appointee. This action is being maintained solely against the municipality and the provisions for notice with regard to the municipality concededly have been complied with. Accordingly, on the facts disclosed, the dual notice provisions should be held operative only where the action is maintained against both the employee and the City. We are not compelled to hold that plaintiff may not drop the policeman "for whose joinder as a codefendant there was no good reason to begin with." (*Kosiba* v. *City of Syracuse, supra,* at p. 288.)

The judgment appealed from should be reversed, with costs to the appellant, and judgment entered in plaintiff's favor for the sum of $12,500, with costs.

COHN and CALLAHAN, JJ., concur; MARTIN, P. J., and UNTERMYER, J., dissent and vote to affirm for the reasons stated by the Trial Judge.

Judgment reversed, with costs, and judgment directed in favor of plaintiff for the sum of $12,500, with costs. Settle order on notice.