GENEVIEVE MEISNER et al., Respondents, *v.* JOSEPH HEALEY et al., Appellants.

First Department, April 18, 1963.

*Seymour B. Quel* of counsel (*Alfred Weinstein* and *Irving Genn* with him on the brief; *Leo A. Larkin, Corporation Counsel*), for City of New York, appellant.

*Julius S. Christensen* (*Harlan E. Cecil* with him on the brief), attorney for Joseph Healey, appellant.

*Denis M. Hurley* of counsel (*James F. Niehoff* with him on the brief; *John W. Olmstead,* attorney), for the Welsbach Corp., appellant.

*Leon Silverman* of counsel (*Milton R. Ackman, Victor S. Friedman* and *Marc P. Cherno* with him on the brief; *Strasser, Spiegelberg, Fried & Frank,* attorneys), for Genevieve Meisner, respondent.

*Martin J. Murtagh* for Mary George and another, respondents.

BASTOW, J. On January 30, 1958 at about 11 in the evening plaintiffs, Genevieve Meisner and Mary George, were passengers in an automobile owned and operated by defendant, Healey, when it collided with a pillar on the ramp leading to the Manhattan side of the Queensborough Bridge. Miss Meisner brought an action against Healey, the City of New York and the Welsbach Corporation (herein "Welsbach"). The action of Mr. and Mrs. George was against the city and Welsbach. Jury verdicts were returned in favor of each plaintiff against the respective defendants each had sued and each defendant appeals.

In view of the cross claim asserted by the city against Welsbach it is necessary to state briefly the negligence asserted by one or more of the plaintiffs against each defendant. Miss Meisner asserted that Healey was negligent in the general operation of his vehicle and specifically that he was driving at an excessive speed under the existing conditions and failed to see the pillar. All plaintiffs charged the city with negligence in at least two respects. First, that it had undertaken to install and maintain warning blinker lights on the pillar and that these had not been working for some weeks before the accident. Second, the plaintiffs alleged that the city was negligent because it "permitted a dangerous and defective condition on the said eastbound ramp on the said bridge to continue to exist." The city and Welsbach had entered into a contract pursuant to which the latter agreed to maintain warning devices on the bridge and to inspect them once in each 48 hours. The respective plaintiffs charged that Welsbach was negligent in its inspection and maintenance of these lights and that such negligence was one of the proximate causes of the accident.

The respective appellants assert many grounds for reversal of the judgment including failure to make a prima facie case, erroneous receipt of evidence and inadequacies in the instructions to the jury. It is recognized that in a protracted trial such as this one judicial minds may not be in accord as to each and every ruling and instruction of the trial court. We conclude, however, that with two exceptions if error occurred it was not of sufficient gravity to warrant a new trial.

Miss Meisner received severe and permanent injuries. To the time of trial she had been hospitalized at various intervals for 139 days. The jury pursuant to the rulings of the trial court could have found her special damages to total $19,415.57. Included in this amount was the sum of $8,195.97 for claimed "lost wages". Actually this amount was not "lost" by plaintiff because her employer continued her salary during her absences. The problem presented is whether these wages were gratuitously paid by the employer and therefore plaintiff may not recover the amount here (*Coyne* v. *Campbell,* 11 N Y 2d 372; *Drinkwater* v. *Dinsmore,* 80 N. Y. 390) or were a collateral contribution emanating from a pension system to which plaintiff had made contributions at one time and recoverable by her in this action (cf. *Healy* v. *Rennert,* 9 N Y 2d 202).

The proof is far from satisfactory. A coemployee of Miss Meisner produced records of the employer to establish the so-called "lost" wages. Upon cross-examination it was brought out that an employee with two years or less service paid premiums for disability benefits. Miss Meisner was a long-time employee so she did not "contribute to disability"—the "sick pay" that plaintiff received was paid by the employer. Effective exploration of the subject was early foreclosed by the announced position of the trial court that the amount was recoverable and that the defendants could not benefit "by the fact that her company may have paid her, or an insurance company may have paid her."

We are unable to determine from this proof whether these were wages gratuitously paid by the employer or some kind of sick pay extended to plaintiff as a "fringe" benefit or some part of a pension plan. We conclude that there was a failure to prove that the amount was received from a collateral source. Thereby the amount only could be a gratuitous payment by the employer and not recoverable.

We turn to a consideration of the cross complaint asserted by the city in its answers against defendant Welsbach. The two defendants, as heretofore stated, had previously entered into a contract by the provisions of which Welsbach had agreed *inter*

*alia* to place and maintain lights on the bridge and to indemnify the city for all damages to which it might be subjected by reason of the negligence of Welsbach.

These defendants stipulated at the beginning of the trial that the court should determine the issues raised by the cross complaints. The jury was not required to make special findings although Welsbach requested such action. When the court after the trial undertook to pass upon these issues it recognized that the basis of the jury's verdict could not be determined. In other words, two separate and distinct theories of negligence had been submitted to the jury. One was the failure of the city and Welsbach to maintain the blinker lights on the pillar. The second was the negligence of the city in permitting the pillar to exist in the highway in its then condition and that such action under all the circumstances was an unreasonable danger to users of the highway separate and apart from the failure to light.

The trial court dismissed the cross complaint by a process of attempting to rationalize the findings of the jury but without making independent findings of fact and applying thereto pertinent legal principles. The result was pure speculation and erroneous.

There appears to be continuing confusion in this area as to the implementation of the provisions of sections 193-a and 264 of the Civil Practice Act. The former is designed to bring in a new party and the latter to plead against one already a party. "Both sections are obviously intended to accomplish the same purpose under different circumstances, the purpose being to avoid multiplicity of litigation and to determine the ultimate rights of all parties in one trial." (*Galka* v. *City of Albany,* 285 App. Div. 27, 29.)

In the case of a third-party proceeding subdivision 5 of section 193-a specifically authorizes the court to obtain special findings from the jury "[w]hen a verdict in plaintiff's favor against the third-party plaintiff might be rendered upon a ground which would not support the claim asserted by the third-party plaintiff against the third-party defendant". Section 459, of course, authorizes special findings in any jury case in addition to a general verdict.

If this procedure is not followed the trial court is required to consider *de novo* the issues of fact and law presented by the cross complaint and answer thereto. (*Schwartz* v. *Merola Bros. Constr. Corp.,* 290 N. Y. 145, 155, 156.)

Since these issues are a nonjury matter we may pass thereon and enter appropriate judgment. (*Mintz* v. *Clavin & Co.,* 4 A D 2d 635, 637, affd. 4 N Y 2d 886.). Considering as we must, the

proof upon which the jury returned its general verdict, we find active negligence on the part of the city that bars its claim for judgment over against Welsbach. This conclusion may be reached without consideration of the nonfunctioning blinker lights and the respective duties of the city and Welsbach to maintain the lights in good condition and their respective obligations, contractual and otherwise, as between themselves in the event of failure to do so.

There was a wealth of proof that the pillar placed as it was in the middle of the access road where the latter intersected with the main road was an unreasonable danger to motorists. There was evidence that the base of the pillar was indistinguishable from the surrounding road bed; that the general lighting at the intersection and around the pillar, which was functioning, was inadequate. The testimony of traffic experts was adduced as to recognized engineering practices employed to give motorists advance notice of the existence of a pillar placed, as here, in a precarious position in a roadway once used for trolley tracks. All of this justifies the conclusion that the city was an active tort-feasor. The dismissal of the cross complaint of the city was correct.

Our decision as to the basic cause of action consists of a minor reduction of the award to plaintiff, Meisner, and affirmance of this and the awards to the other plaintiffs. The allowance of costs to respondents would normally follow but they are withheld because of the inordinate length of the brief of respondent, Meisner, which in large part has been adopted by the other plaintiffs.

The judgment should be modified by reducing by the sum of $8,195.97 the recovery of plaintiff, Meisner, and, as so modified, affirmed without costs. The affirmance of that portion of the judgment dismissing the cross complaint should be without costs.

McNALLY, J. (dissenting in part). I concur in the disposition of the judgment for the plaintiffs and would grant judgment to the City of New York on its cross complaints against the Welsbach Corp.

The amended complaints and bills of particulars allege negligence in the maintenance of the blinker lights attached to column 3. The cross complaints allege the contractual obligation of Welsbach to maintain said lights and to indemnify the city in the event it is cast in judgment because of improper maintenance. On the trial the claim of negligence as to the city was enlarged to include failure to comply with section 82d7–22.0 of the Administrative Code of the City of New York providing

for striping of every post, pillar or supporting column of a superstructure located "in the roadways of streets as to constitute a menace to vehicular traffic". Plaintiffs also introduced expert testimony to the effect that the city did not adequately warn motorists of the alleged condition. (Cf. *Treadwell* v. *City of Yonkers*, 192 App. Div. 421, 423.)

The parties stipulated that the issues of the cross complaints be determined by the court. The issues of the amended complaints were submitted to the jury which returned a general verdict against the defendants. The sole allegation of negligence as to Welsbach is its failure to maintain the blinker lights. Implicit in the general verdict is a finding of negligence on the part of the city and Welsbach in the maintenance of said lights. If plaintiff had not introduced other evidence of negligence on the part of the city, its right of indemnity against Welsbach would be clear. (*Burke* v. *City of New York*, 2 N Y 2d 90, 95.) Nevertheless, the result should be the same despite the other evidence.

The planning, location and erection of the offending column and its approaches were governmental functions to be discharged solely by the city's executive officers and not subject to the opinions of other than city experts or the verdict of the jury. (*Weiss* v. *Fote*, 7 N Y 2d 579; *Murrain* v. *Wilson Line*, 270 App. Div. 372, affd. 296 N. Y. 845.) The prior occurrence on December 14, 1957 enabled the jury to find that it was causally related to the failure of the blinker lights (*Kaplan* v. *City of New York*, 10 A D 2d 319, 321) and that the failure to properly maintain them created a dangerous condition to the knowledge of the city and Welsbach. (*Eastman* v. *State of New York*, 303 N. Y. 691.)

The section of the Administrative Code relied on by the plaintiffs does not aid them. It is expressly applicable to roadways and streets and not to bridges. Moreover, the city's failure to enforce it is not actionable. (*Rivera* v. *City of Amsterdam*, 5 A D 2d 637.) "A fortiori, tort liability may not be imposed upon a city for violation of an ordinance, even though the ordinance has become the standard of care and the measure of liability so far as the conduct of members of the general public is concerned." (18 McQuillin, Municipal Corporations [3d ed.], § 53.36, pp. 232–234; *Von Der Haar* v. *City of St. Louis*, 226 S. W. 2d 376, 380 [Mo.]; *Bean* v. *City of Moberly*, 350 Mo. 975.)

The record fails to demonstrate any legal liability except for the failure to maintain the warning lights. The city is therefore entitled to indemnity unless it affirmatively appears that the jury found other active negligence. The general verdict does not

establish negligence other than the failure to maintain the blinker lights. The trial court under the stipulation of the parties was free to determine the issues of the cross complaints; this it failed to do because constrained by the verdict.

We may make the determination which the trial court ought to have made. (Civ. Prac. Act, § 584, subd. 2; *Calabria* v. *City & Suburban Homes Co.*, 5 A D 2d 983, affd. 5 N Y 2d 918; *Massey* v. *Matza*, 11 A D 2d 36; *Leonard* v. *Frantz Co.*, 268 App. Div. 144; *Bernardine* v. *City of New York*, 268 App. Div. 444; 9 Carmody-Wait, New York Practice, § 177, p. 603.)

In the circumstances there should be judgment for the city on its cross complaints against Welsbach.

BREITEL, J. P., and EAGER, J., concur with BASTOW, J.; McNALLY, J., dissents in part in opinion, in which VALENTE, J., concurs.

Judgment modified by reducing by the sum of $8,195.97 the recovery of plaintiff, Meisner, and, as so modified, affirmed without costs. The affirmance of that portion of the judgment dismissing the cross complaint is without costs. Settle order on notice.